903 So.2d 1019 (2005)
Betzaida FONTE, Appellant,
v.
AT&T WIRELESS SERVICES, INC., Appellee.
No. 4D04-219.
District Court of Appeal of Florida, Fourth District.
June 15, 2005.
*1021 George A. Hanson, Amy E. Bauman of Stueve Helder Siegel LLP, Kansas City, MO, and Carl F. Schoeppl of Schoeppl & Burke, P.A., Boca Raton, for appellant.
David P. Ackerman and Ryon M. McCabe of Ackerman, Link & Sartory, P.A., West Palm Beach, for appellee.
POLEN, J.
Appellant, Betzaida Fonte, has appealed a non-final order staying a purported class action case and compelling arbitration. This court has jurisdiction. Fla. R.App. P. 9.130(a)(3)(C)(iv). We reverse in part and affirm in part as follows.
Fonte's proposed class action complaint against AT&T Wireless alleged, among other things, breach of contract and a violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) by unilaterally changing customer rate plans. On January 28, 2002, Fonte entered Alpha Cellular, which sold wireless service for AT&T, Nextel, T-Mobile and MetroPCS. Fonte, who regards herself as an informed consumer, chose AT&T as her service provider because she preferred its rate plan. It is undisputed that Fonte was not under any pressure to enter into a contract with AT&T. Fonte eventually signed a two-year Personal Service Agreement.
The Personal Service Agreement provided in relevant part:
This Agreement hereby incorporates by reference the Terms and Conditions and other information set forth in the AT&T Wireless Welcome Guide ... the Rate Plan Brochure and/or feature or promotional materials (collectively, "Sales Information") that you were provided ... By signing below you acknowledge that you have received and reviewed the Terms and Conditions and Sales Information and that you agree to be bound by such Terms and Conditions and the Sales Information for the term of your Agreement.
In accordance with the Personal Service Agreement, Fonte received a telephone package, which clearly indicated that it contained the AT&T Wireless Welcome Guide, in which the challenged Terms and Conditions were located. Although Fonte testified that she did not receive an AT&T Wireless Welcome Guide, AT&T presented evidence that every phone comes with one. Fonte's salesman, however, did not discuss the Terms and Conditions contained in the AT&T Wireless Welcome Guide, nor was it is his practice to do so with customers.
*1022 The AT&T Wireless Welcome Guide contains information a customer needs to know about the phone, as well as the Terms and Conditions of service. The third page of the AT&T Wireless Welcome Guide has a bold heading captioned "Terms and Conditions" and states that by using AT&T's services a customer consents to the Terms and Conditions which can be found in full on page 32. AT&T's monthly invoices also referenced these Terms and Conditions. The Terms and Conditions section of the AT&T Wireless Welcome Guide provides in relevant part:
5. RESOLUTION OF DISPUTES
PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS RIGHTS THAT YOU MAY OTHERWISE HAVE. IT PROVIDES FOR RESOLUTION OF MOST DISPUTES THROUGH ARBITRATION INSTEAD OF COURT TRIALS AND CLASS ACTIONS. ARBITRATION IS FINAL AND BINDING AND SUBJECT TO ONLY VERY LIMITED REVIEW BY A COURT. ...
a. Binding Arbitration. This provision is intended to be interpreted broadly to encompass all disputes or claims arising out of our relationship. Any dispute or claim made by you against us ... arising out of or relating to this Agreement... (whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory) will be resolved by binding arbitration except that (1) you may take claims to small claims court... or (2) you or we may choose to pursue claims in court if the claims relate solely to the collection of any debts you owe to us. However, even for those claims that may be taken to court, you and we both waive any claims for punitive damages and any right to pursue claims on a class or representative basis.

b. Arbitration Procedures. ... An arbitrator may not award relief in excess of or contrary to what this Agreement provides, order consolidation or arbitration on a class wide or representative basis, or award punitive damages or any other damages aside from the prevailing party's actual damages, except that the arbitrator may award on an individual basis damages required by statute and may order injunctive or declaratory relief pursuant to an applicable consumer protection statute....
c. Costs of Arbitration. All administrative fees and expenses of an arbitration will be divided equally between you and us, except that for claims of less than $1,000, you will be obligated to pay $25 and we will pay all other administrative costs and fees. In all arbitrations, each party will bear the expense of its own counsel, experts, witnesses and preparation and presentation of evidence at the arbitration.
d. Waiver of Punitive Damage Claims and Class Actions. By this Agreement, both you and we are waiving certain rights to litigate disputes in court. If for any reason this arbitration clause is deemed inapplicable or invalid, you and we both waive, to the fullest extent allowed by law, any claims to recover punitive or exemplary damages and any right to pursue any claims on a class or consolidated basis or in a representative capacity.
* * *
If any of this Agreement is found invalid, the balance of the Agreement remains enforceable.
In June of 2002, AT&T instituted two relatively small rate changes: (1) directory assistance calls were increased from $.99 to $1.25 and (2) busy or unconnected calls lasting longer than 30 seconds would now be billed. AT&T sent out a notice to all subscribers notifying them of these changes and informing them that "If you *1023 do not want to accept the changes ..., you can cancel your service without incurring an early cancellation fee by notifying us within the next 20 days." On August 25, 2002, Fonte called AT&T and told it that she had heard from a friend that she could cancel her contract without penalty but was not sure why. AT&T informed her of the two rate changes, and also told her that her 20-day window to cancel the contract without a penalty had expired. Fonte wished to cancel her contract and requested that this penalty be waived, but AT&T refused. Two days later, Fonte again requested that this penalty be waived, but AT&T again refused such request. Fonte ultimately canceled her contract without a waiver of the penalty, thus paying the $175 early termination penalty.
On September 26, 2002, Fonte filed a class action lawsuit against AT&T, alleging breach of contract, fraud, and a violation of FDUTPA. On November 25, 2003, the trial court held an evidentiary hearing on AT&T's motion to compel arbitration. The trial court ultimately granted AT&T's motion and adopted in large part AT&T's proposed order, finding that the challenged contractual provisions are not procedurally or substantively unconscionable.
Fonte argues that the trial court erred by granting AT&T's motion to compel arbitration based upon the arbitration clause in the AT&T Wireless Welcome Guide. She asserts that the arbitration clause is unenforceable.
The trial court's decision was based in part on factual findings. Accordingly, it presents a mixed question of law and fact. The standard of review applicable to the trial court's factual findings is whether they are supported by competent, substantial evidence. However, the standard of review applicable to the trial court's construction of the arbitration provision, and to its application of the law to the facts found, is de novo.

Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 283 (Fla. 1st DCA 2003) (citations omitted).
There are two frameworks which courts have used when confronted with this issue: (1) whether the arbitration clause is void as a matter of law because it defeats the remedial purpose of the applicable statute, or (2) whether the arbitration clause is unconscionable.[1] As these frameworks are distinct from one another, for purposes of this opinion we have analyzed both. Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296 (Fla. 4th DCA 2005)(en banc).

*1024 IS AT&T'S CONTRACT VOID AS A MATTER OF LAW?
"A remedial statute is designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good. It is also defined as [a] statute giving a party a mode of remedy for a wrong, where he had none, or a different one, before." Adams v. Wright, 403 So.2d 391, 394 (Fla.1981) (citation omitted). FDUTPA is a remedial statute designed to protect consumers. See Beacon Prop. Mgmt., Inc. v. PNR, Inc., 890 So.2d 274, 279 (Fla. 4th DCA 2004). One of those remedial purposes is to provide for the possibility of an attorney's fee award. § 501.2105, Fla. Stat.
The Florida Deceptive Trade Practices Act depends for enforcement on its "enforcing authority" and the injured consumers. If, because of the small sums involved, consumers cannot recover in full their attorney fees, they will quickly determine it is too costly and too great a hassle to file suit, and individual enforcement of this act will fail.... The obvious purpose of the "little FTC Act" is to make consumers whole for losses caused by fraudulent consumer practices.... These aims are not served if attorney fees are not included in the protection.
LaFerney v. Scott Smith Oldsmobile, Inc., 410 So.2d 534, 536 (Fla. 5th DCA 1982). Accordingly, the arbitration clause's bar on an award of attorney's fees defeats a remedial purpose of FDUTPA.
However, the Agreement has a severability clause, stating: "If any of this Agreement is found invalid, the balance of the Agreement remains enforceable." As a general rule, contractual provisions are severable, where the illegal portion of the contract does not go to its essence, and, with the illegal portion eliminated, there remain valid legal obligations. Gold, Vann & White, P.A. v. Friedenstab, 831 So.2d 692 (Fla. 4th DCA 2002). Where the entire contract is illegal, however, severability is not available. Cardegna v. Buckeye Check Cashing, 894 So.2d 860 (Fla.2005)(no severability of arbitration provision where it was alleged entire contract for loan was illegal and therefore void ab initio). Severability is also supported by our arbitration code, which contemplates that arbitration shall still be carried out if the agreed method for the appointment of arbitrators cannot be followed for any reason. § 682.04, Fla. Stat. (2001). We find the void provision prohibiting any award of attorney's fees can be severed without affecting the intent of the parties to arbitrate. See Healthcomp Evaluation Servs. Corp. v. O'Donnell, 817 So.2d 1095 (Fla. 2d DCA 2002)(severing offensive provision in arbitration clause, but upholding arbitration); Anders v. Hometown Mortg. Servs., 346 F.3d 1024 (11th Cir.2003). Accordingly, we instruct the trial court on remand to sever this clause denying attorney's fees so as to bring the Agreement in conformity with the remedial purposes of FDUTPA.
While FDUTPA's claims are susceptible to class action suits, see Turner Greenberg Assocs., Inc. v. Pathman, 885 So.2d 1004 (Fla. 4th DCA 2004), and Davis v. Powertel, Inc., 776 So.2d 971 (Fla. 1st DCA 2000), in this case the arbitration clause's bar on class representation does not defeat any of the remedial purposes of FDUTPA.
[A] class action is an available, important means of remedying [certain] violations.... However, there exists a difference between the availability of the class action tool, and possessing a blanket right to that tool under any circumstance.... An intent to create such a "blanket right," a non-waivable right, to litigate by class action [must] be gleaned from the text and the legislative history.
Randolph v. Green Tree Fin. Corp.Alabama, 244 F.3d 814, 817 (11th Cir.2001) (discussing availability/right of class action *1025 under Truth in Lending Act (TILA)). We find that neither the text nor our review of the legislative history of FDUTPA suggests that the legislature intended to confer a non-waivable right to class representation. Moreover, there are numerous enforcement mechanisms which can protect consumers other than class actions. See Alan S. Kaplinsky & Mark J. Levin, The Gold Rush of 2002: California Courts Lure Plaintiffs' Lawyers (but Undermine Federal Arbitration Act) by Refusing to Enforce "No-Class Action" Clauses in Consumer Arbitration Agreements, 58 Bus.L. 1289, 1300 (2003). As an alternative to arbitration, an individual consumer may take a claim to small claims court if the suit qualifies. Likewise, regardless of the forum, the consumer retains all substantive rights and remedies against AT&T that he or she is granted under FDUTPA, namely, actual damages, declaratory and injunctive relief, and attorney's fees, which will be available sub judice after the clause barring such is severed. Finally, FDUTPA provides for administrative enforcement, offering the identical remedies available on an individual basis, through the State Attorney's Office or the Department of Legal Affairs. §§ 501.203 & 501.207, Fla. Stat. This additional enforcement mechanism presents an added deterrent effect to violators if private enforcement actions should fail to fulfill that role. It also gives another possible avenue of recovery for consumers.

IS AT&T'S CONTRACT UNCONSCIONABLE?
There are two types of unconscionability, procedural and substantive. Procedural unconscionability concerns the manner in which the contract is entered, whereas substantive unconscionability looks to whether the contractual terms are unreasonable and unfair. Romano v. Manor Care, Inc., 861 So.2d 59, 62 (Fla. 4th DCA 2003).
To decline to enforce a contract as unconscionable, the contract must be both procedurally unconscionable and substantively unconscionable. See Powertel, Inc. v. Bexley, 743 So.2d 570, 574 (Fla. 1st DCA 1999) (citation omitted); Kohl v. Bay Colony Club Condo., Inc., 398 So.2d 865, 867 (Fla. 4th DCA 1981).... Most courts take a "balancing approach" to the unconscionability question, and to tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability. The amount of either may vary. The prevailing view is that procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree.... In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.
Romano, 861 So.2d at 62 (citations omitted) (emphasis added).
As the case law provides no direction requiring us to address either component of unconscionability before the other, we choose to first address procedural unconscionability, i.e., the relative bargaining power of the parties, the manner in which the contract was entered, and the ability of Fonte to know and understand the challenged contractual terms. There is no doubt that AT&T had almost unilateral bargaining power.[2] Notwithstanding, *1026 there is an absence of procedural unconscionability. Fonte misplaces reliance on two recent cases to support her position.
In Romano, this court held that although an arbitration clause was not hidden in the fine print, there was some small quantum of procedural unconscionability for the following reasons. First, there was no proof that the plaintiff had the legal sophistication to know what legal rights he was signing away. Second, the plaintiff was asked to sign the documents at a stressful and vulnerable time (admitting sick wife into nursing home). Third, the defendant did not attempt to explain any of the terms used in the documents. Finally, the plaintiff was not informed of nor did the documents indicate the consequence of not signing the documents.
Contrary to the plaintiff in Romano, Fonte had considered herself an informed consumer and carefully examined the different wireless service providers before ultimately choosing AT&T. Fonte also had some knowledge of the legal system as she had once been a plaintiff in a lawsuit and once applied to become a member of a class action product liability case. Furthermore, there is no evidence that Fonte was in a vulnerable state or subject to any high pressure sales tactics which influenced her decision to sign AT&T's contract. Finally, although the arbitration clause was somewhat buried, page 38 of a 40-page booklet, Fonte received ample notice to review the Terms and Conditions of her Service Agreement with AT&T. Specifically, the package which Fonte received her phone in contained a notice to review the included Terms and Conditions on four of the six sides of the package. Likewise, AT&T's monthly invoices also referenced these Terms and Conditions. Therefore, the unique circumstances under which the contract at bar was entered are distinguishable from the circumstances in Romano.
Fonte also relies on Powertel, 743 So.2d 570, to support her procedural unconscionability argument. In Powertel, an arbitration clause was prepared and unilaterally imposed on customers as an insert to their monthly wireless bill. The customers had no bargaining ability, nor the power to reject the arbitration clause. Essentially, the customers had no choice but to agree to the new arbitration clause if they wished to avoid losing their investment in the phones that worked only with the Powertel system. The first district held:
It is reasonable to assume that some customers may suffer a great deal of inconvenience and expense to obtain and publish a new telephone number. Hence, it is no answer to say that the customers can simply switch providers. Many customers may have continued their service with Powertel despite their objection to the arbitration clause simply because they had no economically feasible alternative.
Powertel, 743 So.2d at 574-75. The first district also noted that "[t]he pamphlet containing the clause appears at first glance to be little more than a restatement of the original terms and conditions of service .... there is nothing to indicate that the pamphlet contains anything new." Id. at 575.
Contrary to the manner in which the arbitration clause in Powertel was imposed, AT&T included the arbitration clause in the original contract and notified Fonte numerous times to carefully review the Terms and Conditions of her Personal *1027 Service Agreement. If Fonte was unsatisfied with the terms, she did not have to sign the contract. Likewise, Fonte had a period of time to cancel the contract after its execution if, upon further review, she was not satisfied with the Terms and Conditions. Moreover, unlike the plaintiff in Powertel, Fonte had no prior investment in AT&T equipment which may have motivated her to accept any unsatisfactory contractual terms due to economic feasibility. Instead, Fonte was free to choose any wireless service provider without limitation. Therefore, the unique circumstances under which the contract at bar was entered are also distinguishable from the circumstances in Powertel.
As we have found a lack of procedural unconscionability, which is necessary before we could decline to enforce a contract as unconscionable, we need not address substantive unconscionability. Consequently, we reverse with instructions for the trial court to sever the clause that bars any recovery of attorney's fees. In all other respects, the trial court's order is affirmed. The parties shall proceed to arbitration in accordance with this opinion.
Reversed in Part, Affirmed in Part.
WARNER and HAZOURI, JJ., concur.
NOTES
[1] Many courts have previously engaged in an unconscionability analysis, utilizing a sliding scale for procedural and substantive unfairness. See Palm Beach Motor Cars Ltd., Inc. v. Jeffries, 885 So.2d 990 (Fla. 4th DCA 2004); Stewart Agency, Inc. v. Robinson, 855 So.2d 726 (Fla. 4th DCA 2003); Consol. Resources Healthcare Fund I, Ltd. v. Fenelus, 853 So.2d 500 (Fla. 4th DCA 2003); Chapman v. King Motor Co. of So. Fla., 833 So.2d 820 (Fla. 4th DCA 2003); Bellsouth Mobility LLC v. Christopher, 819 So.2d 171 (Fla. 4th DCA 2002); Gainesville Health Care, 857 So.2d 278; Powertel, Inc. v. Bexley, 743 So.2d 570 (Fla. 1st DCA 1999); see also Romano v. Manor Care, Inc., 861 So.2d 59 (Fla. 4th DCA 2003)(discussing unconscionability in dicta). However, many courts have also looked first to whether the arbitration clause defeats the remedial purpose of the applicable statute. See Romano, 861 So.2d at 59 (holding limitations in arbitration agreement effectively defeated statutory remedies; court then unnecessarily discussed unconscionability analysis); Orkin Exterminating Co. v. Petsch, 872 So.2d 259 (Fla. 2d DCA 2004); Holt v. O'Brien Imports of Fort Myers, Inc., 862 So.2d 87, 89 (Fla. 2d DCA 2003); Brasington v. EMC Corp., 855 So.2d 1212 (Fla. 1st DCA 2003); Flyer Printing Co., Inc. v. Hill, 805 So.2d 829 (Fla. 2d DCA 2001); see also Green Tree Fin. Corp.Ala. v. Randolph, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).
[2] "Although not dispositive of this point, ... the arbitration clause is an adhesion contract. Generally, an adhesion contract is defined as a standardized contract form offered to consumers of goods and services on essentially a `take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract." Powertel, 743 So.2d at 574.