912 So.2d 34 (2005)
VOICESTREAM WIRELESS CORPORATION, a foreign corporation, Appellant,
v.
U.S. COMMUNICATIONS, INC., a Florida corporation, VoiceNet Wireless, Inc., a Florida corporation, GSM Network, Inc., a Florida corporation, and CDB Duke Enterprises, Inc., a Florida corporation, Appellees.
No. 4D04-4913.
District Court of Appeal of Florida, Fourth District.
August 24, 2005.
Rehearing Denied October 20, 2005.
*36 Cory W. Eichhorn and Matthew Triggs of Proskauer Rose, LLP, Boca Raton, and Kristine McAlister Brown of Alston & Bird, LLP, Atlanta, Georgia, for appellant.
Harriet R. Lewis and Michael L. Stines of Weiss Serota Helfman Pastoriza Guedes Cole & Boniske, P.A., Fort Lauderdale for appellees GSM Network, Inc., a Florida corporation, and VoiceNet Wireless, Inc., a Florida corporation.
Steven M. Goldsmith of Steven M. Goldsmith, P.A., Boca Raton, and Scott W. Leeds of Leeds, Colby & Paris, P.A., Miami, for appellees U.S. Communications, Inc., a Florida corporation, and CDB Duke Enterprises, Inc., a Florida corporation.
HAZOURI, J.
This case involves the enforceability of an arbitration clause included in a contract executed by VoiceStream Wireless Corporation and each of the Appellees. The trial court found the contract both procedurally and substantively unconscionable and therefore, unenforceable. We disagree. We find certain contractual provisions unenforceable, but hold that the arbitration agreement is enforceable.
The contract involved in this appeal was executed between VoiceNet Wireless, Inc., U.S. Communications, Inc., GSM Networks, Inc., and CDB Duke Enterprises, Inc., (hereinafter Dealers), who were four corporations that contracted with VoiceStream, a wireless service provider, to sell cellular phone service and enter into contracts with subdealers to do the same. The Dealers were going to become what the parties referred to as master dealers in the South Florida market. At the time of this business deal, VoiceStream was the only provider in South Florida offering GSM cellular phone service. GSM technology allows cellular phone users to travel worldwide while continuing to use their cellular phones. Eventually, the business relationship went sour and the Dealers filed suit against VoiceStream alleging violations of the Florida Franchise Act and tortious interference with a business relationship. In response to the suit, VoiceStream moved for a stay pending arbitration, based on the arbitration clause in the contract (hereinafter dealer agreement). Each dealer agreement includes an arbitration clause that reads:
12.11.1 Arbitration Clause. Except as stated in paragraph 12.11.5 below, all claims, counterclaims, cross-claims, and disputes between Dealer and Company (including whether any particular dispute is arbitrable hereunder), shall be resolved by submission to binding arbitration. Company shall have the right, in its sole discretion, to submit any such disputes to the Seattle, Washington, or another office, of Judicial Arbitration & Mediation Services, Inc. ("JAMS"), any other arbitration or mediation services of its choosing, or to arbitrate any such *37 disputes under the commercial arbitration rules of the American Arbitration Association ("AAA"), before one neutral arbitrator, except to the extent that those rules are modified herein.
The trial court permitted the parties to conduct limited discovery to determine the existence of binding contracts between VoiceStream and each of the Dealers. Thereafter, the trial court conducted an evidentiary hearing on the matter over a three-day period, the result of which was the trial court's entry of an order denying VoiceStream's motion to stay. The trial court found that the contract was unconscionable. In addressing procedural unconscionability, the trial court found the following facts:
the contract was clearly drafted by VOICESTREAM and any ability to negotiate terms was not available. Therefore, the Plaintiffs in reality had no ability or opportunity to bargain or alter any of the terms and had no input into the preparation of the contract. Moreover, there were no alternative sources for supply of cellular phones in the South Florida market with a GSM format.
In its ruling on substantive unconscionability, the trial court found:
that the contract is substantively unconscionable since under the circumstances of the case it requires the Plaintiffs to give up many specific legal remedies. In fact, the contract specifically provides that the Plaintiffs give up the right to seek incidental, special consequential or punitive damages, including but not limited to lost revenue or profits in connection with the agreement or its breach.
In essence, the Plaintiffs have given up the right to any damages based upon the arbitration agreement. However, such limitations are not imposed upon the Defendant to recover such damages. Likewise, the forum selection clause providing for arbitration in Washington may effectively foreclose or waive at least one of the Plaintiffs' right to pursue the claim because of the cost associated therewith, based upon the evidence presented by the Plaintiff GSM. In addition, the contract provides that VOICESTREAM "alone" has the sole option of pursuing arbitration. Likewise, VOICESTREAM, unlike the Plaintiffs, have a right to pursue court action by way of seeking injunction or other equitable relief to enforce any right, duty or obligation under the agreement.
(citation omitted). The trial court's order properly set up the legal analysis by which it would make its decision. We address the enforceability of various provisions of the contract discussed by the trial court and determine that where the dealer agreement includes a severability clause,[1] the presence of certain unenforceable provisions in the contract does not require a finding that the arbitration agreement is unenforceable.
In ruling on a motion to compel arbitration, there are three factors for the court to consider: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So.2d 633 (Fla.1999). At issue in the instant case is the first of these *38 factors where the trial court found that the contract was both procedurally and substantively unconscionable, thus making the arbitration agreement unenforceable. A trial court's denial of a motion to compel arbitration based on its construction of the contract is subject to review by the de novo standard as it presents an issue of law. See Powertel, Inc. v. Bexley, 743 So.2d 570, 573 (Fla. 1st DCA 1999). We find that two of the provisions relied upon by the trial court are unenforceable.
The trial court's analysis relied upon various provisions of the dealer agreement which are separate from the arbitration agreement and did not address the impact of the severability clause included in the contract. One provision that is separate and apart from the arbitration agreement is the contract's damages limitation. The dealer agreement contains a limitation of liability clause which reads:
10.3 Limitation of Liability. IN NO EVENT SHALL COMPANY BE LIABLE FOR INCIDENTAL, SPECIAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES, INCLUDING, BUT NOT LIMITED TO LOST REVENUE OR PROFITS, IN CONNECTION WITH THIS AGREEMENT OR ITS BREACH, OR ARISING FROM THE RELATIONSHIP OF THE PARTIES OR THE CONDUCT OF BUSINESS BETWEEN THEM, EVEN IF COMPANY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.
Parties can contract to limit their liability. See Fotomat Corp. v. Chanda, 464 So.2d 626, 630 (Fla. 5th DCA 1985). However, a party cannot waive liability imposed by statutory provisions that are intended to protect both an individual and the public because to do so would be contrary to public policy. See Holt v. O'Brien Imports of Fort Myers, Inc., 862 So.2d 87, 89 (Fla. 2d DCA 2003). Appellees' complaint against VoiceStream includes a claim for violation of the Florida Franchise Act, section 817.416, Florida Statutes (2000), which provides that a party who shows a violation of the Act may recover "all moneys invested in such franchise or distribution" and the court may award such person reasonable attorney's fees and costs. § 817.416(3), Fla. Stat.
The limitation of liability clause does not appear to eliminate "actual damages" prescribed by the Florida Franchise Act of all moneys invested by the Dealers. However, to the extent that the limitation does defeat the purpose of a remedial statute, the limitation may be found void as a matter of law. See Fonte v. AT & T Wireless Servs., Inc., 903 So.2d 1019, 1024 (Fla. 4th DCA 2005). Therefore, on remand, should the Dealers prove their entitlement to money damages provided for in section 817.416 at arbitration, the limitation of liability clause may not be a basis upon which to deprive the Dealers of their statutory remedy.
Another clause that must be addressed is the exclusion of any right to appeal an arbitrator's decision. We agree with the second district that such a provision conflicts with the Florida Arbitration Code and is thus, unenforceable. See Healthcomp Evaluation Servs. Corp. v. O'Donnell, 817 So.2d 1095, 1097 (Fla. 2d DCA 2002). Despite the presence of these two provisions in the dealer agreement, we conclude that where the contract contains a severability clause, their presence does not require a holding that the arbitration agreement is similarly unenforceable. "As a general rule, contractual provisions are severable, where the illegal portion of the contract does not go to its essence, and, with the illegal portion eliminated, there remain valid legal obligations." Fonte, 903 So.2d at 1024. Moreover, severability is *39 supported by Florida's arbitration code. Id. (citing § 682.04, Fla. Stat. (2001)). Having found two provisions of the contract unenforceable and severable, this analysis continues to determine if absent these two provisions, the arbitration agreement included in the dealer agreement is enforceable.
To find an arbitration clause unenforceable on grounds of unconscionability, both procedural and substantive unconscionability must be found, although not in equal amounts. See Palm Beach Motor Cars Ltd., Inc. v. Jeffries, 885 So.2d 990, 992 (Fla. 4th DCA 2004); Fonte, 903 So.2d at 1025. Instead, a balancing approach is employed allowing one prong to outweigh another provided that there is at least a modicum of the weaker prong. Id. Under the present facts, we disagree with the trial court's finding that the contract was unconscionable.
The trial court's finding of procedural unconscionability was based on a finding that VoiceStream drafted the contract, there was no ability to negotiate terms, and there was no alternative source for the product the Dealers sought to obtain. "The procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." Powertel, Inc. v. Bexley, 743 So.2d 570, 574 (Fla. 1st DCA 1999), cited with approval in Stewart Agency, Inc. v. Robinson, 855 So.2d 726, 727-28 (Fla. 4th DCA 2003), and Jeffries, 885 So.2d at 992. These parties were entering into a business agreement which provided that VoiceStream was going to supply the Dealers with a product they would use in their business venture.
The Dealers argue that they had unequal bargaining power in this situation. However, this argument is not persuasive where there are no facts alleged in their complaint that support a substantial disparity between the parties. See Wieneke v. Raymond, James & Assocs., Inc., 495 So.2d 869, 871 (Fla. 2d DCA 1986). In Wieneke, the court found this argument insufficient to support a finding that the arbitration agreement was unenforceable where investors entered into a contract with their brokerage firm. The Dealers, while similarly dealing with an entity larger than themselves, were not on as unequal a footing as the investors in Wieneke were with their brokerage firm. Id. The Dealers were conducting a commercial transaction as corporate entities, they were represented by experienced business persons, they were given ample opportunity to read the contract and seek advice of counsel. There is no indication VoiceStream was not available to the Dealers to answer any questions or address any concerns. There is no evidence to support that the contract was executed during a vulnerable time or that the Dealers were not aware of the consequences of signing the document. See Fonte, 903 So.2d at 1026 (distinguishing Romano v. Manor Care, Inc., 861 So.2d 59 (Fla. 4th DCA 2003) on such grounds). This is not a case where the arbitration agreement was on the back of a document and the only reference to terms on the back of the document was barely readable due to the use of fine print. Jeffries, 885 So.2d at 992. There is no indication that the circumstances surrounding the parties' execution of the contract hindered the Dealers' ability to recognize and understand the terms of the contract they now dispute.
Another factor which the Dealers argue requires a finding of procedural unconscionability is that they were presented *40 the contract on a "take it or leave it" basis from the only provider of a product which they needed to conduct their business. "[T]he fact that a contract is one of adhesion is a strong indicator that the contract is procedurally unconscionable because it suggests an absence of `meaningful choice.'" Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 285 (Fla. 1st DCA 2003) (quoting Powertel, 743 So.2d at 574-75). However, the presence of an adhesion contract alone does not require a finding of procedural unconscionability. See Fonte, 903 So.2d at 1025 n. 2; Orkin Exterminating Co. v. Petsch, 872 So.2d 259, 265 (Fla. 2d DCA 2004).
In Petsch, Fonte, and Weston, the courts noted that the purchaser of services was free to obtain such services elsewhere and therefore, was not forced to sign the contract. See, e.g., Weston, 857 So.2d at 285. Although the Dealers' argument concerning the "take it or leave it" nature of the contract is appealing, we do not find that the language in Fonte, Petsch, Weston, or Powertel supports the position that a party who seeks a product for its commercial enterprise must be able to secure that exact product in the location and at the time they are seeking to use it in their business venture. The Dealers' argument requires a narrow reading of the term "meaningful choice." The Dealers could have decided to sell the same product in a different market where GSM was available from another wireless provider, or the Dealers could have chosen to use one of the other technologies of cellular service. Admittedly, none of the other technologies would have permitted the cellular user to use his or her cellular phone worldwide. However, the Dealers could have decided to look for another product to support their commercial endeavors.
We agree with VoiceStream that a ruling on this point in the Dealers' favor would be far reaching for businesses that come up with new products or services that their competition has yet to offer. Where the manner in which the Dealers executed the contract does not support a finding of procedural unconscionability, we decline to hold that the fact that VoiceStream was the only provider of a certain technology that the Dealers sought to utilize for their commercial undertaking requires a finding of procedural unconscionability.
Having concluded that there is no procedural unconscionability, we recognize that our analysis could end there, but write to address the trial court's finding on substantive unconscionability which was based on the fact that the contract required the Dealers to give up specific legal remedies. The test for substantive unconscionability is to determine if the terms of a contract are so "`outrageously unfair' as to `shock the judicial conscience.'" See Weston, 857 So.2d at 285. The two clauses discussed in the first part of this opinion are not considered in this examination where we have already detailed the extent to which they are not enforceable and are severable.
There are two other clauses that the trial court relied upon in support of its position on substantive unsconscionability. The trial court found that the contract gave VoiceStream the discretion to decide if it would pursue arbitration. The trial court's construction of the arbitration provision is reviewed by this court using a de novo standard of review. See Fonte, 903 So.2d at 1023. We hold the trial court's interpretation of the clause is incorrect. The first sentence of the clause includes mandatory language requiring all disputes between the parties be arbitrated. The second sentence of the arbitration clause that grants VoiceStream discretion goes to which arbitration entity will conduct *41 the arbitration. We agree with VoiceStream's interpretation of the clause which provides that VoiceStream does not have the discretion to decide if the parties arbitrate, but does have the discretion as to at which office of a certain arbitration entity the arbitration will take place or which arbitration entity will conduct the arbitration.
The trial court also relied on the forum selection clause effectively waiving at least one Dealer's opportunity to pursue its claim. This court rejected a similar argument where there was no evidence that the cost of arbitration was greater than the expense of litigation. Robinson, 855 So.2d 726, 728-29. While one Dealer testified that he would be effectively foreclosed from pursuing his claim should he be required to bring the claim in Washington, there was no evidence that the cost of litigating in South Florida would be considerably less than the cost of arbitrating in Washington. The fact that a forum selection clause in a contract executed between two commercial entities may make proceeding on one's claim more expensive than if the forum selection clause was not included, is not so outrageous as to require the arbitration clause to be found substantively unconscionable.
The trial court's order on VoiceStream's motion to stay pending arbitration is hereby reversed. This case is remanded for further proceedings consistent with this opinion.
Reversed and Remanded.
GUNTHER and WARNER, JJ., concur.
NOTES
[1] The severability clause reads as follows:

If any provision of this Agreement shall be held invalid under any applicable laws, such invalidity shall not affect any other provision of this Agreement that can be given an effect without the invalid provision. Further, all terms and conditions of this Agreement shall be deemed enforceable to the fullest extent permissible under applicable law, and, when necessary, the court is requested to reform any and all terms or conditions to give them such effect.