Revised Opinion

COPE, J.
On consideration of the appellant’s motion for rehearing, the court withdraws its previous opinion and substitutes the following opinion.
This is an appeal of an order denying a motion to compel arbitration of claims brought against an automobile dealer. We affirm in part and reverse in part.
I.
In 2004, Roberto Basulto and Raquel Gonzalez, who are husband and wife (“the buyers”), purchased a new 2005 Dodge Caravan from Hialeah Automotive, LLC, which does business as Potamkin Dodge (“the dealer”). The buyers alleged that while at the dealership, the dealer had the buyers sign the contract in blank, with the representation that the agreed-upon numbers would be filled in. The buyers alleged that when the dealership completed the sales contract, it allowed them a lower trade-in allowance than the amount agreed upon. The dealer refused to correct the situation. After negotiations proved unsuccessful, the buyers returned the van to the dealership (having driven a total of seven miles) and demanded the return of their trade-in. The trade-in had been sold.
The buyers brought suit alleging fraud in the inducement and violation of the Florida Deceptive and Unfair Trade Practices Act (“FDUTPA”). See Ch. 501, pt. II, Fla. Stat. (2004). The buyers also sought rescission of the arbitration agreements they had signed, and rescission of the loan agreement.
The dealer moved to compel arbitration. The trial court held an evidentiary hearing at which the buyers and representatives of the dealer testified. The trial court ruled that: (a) the arbitration agreements were unconscionable; (b) the agreements were written so as to defeat the remedial purpose of the FDUTPA; and (c) the request for public injunctive relief under the FDUTPA was not a remedy an arbitrator could enforce and oversee. The dealer has appealed.
II.
An arbitration agreement is, very simply, one in which the parties have agreed to submit them dispute to an arbitrator (or panel of arbitrators) instead of a judge. 1 Larry E. Edmonson, Domke on Commercial Arbitration, § 1:1, at 1-1, 1-2 (2007) [ (hereinafter Domke) ]. It is the substitution of one decision-maker in place of another.
By agreeing to arbitrate, a party does not give up substantive rights afforded by statute or common law. The party only agrees to submit the dispute to “resolution in an arbitral, rather than a judicial, forum.” Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3846, 87 L.Ed.2d 444 (1985) (statutory claim); 1 Domke, supra, § 23:10, at 23-23.
A.
We turn first to the parties’ “Agreement to Arbitrate Disputes” (the “Agreement”). This one-page, stand-alone Agreement called for the arbitration of any dispute concerning the sale of the vehicle, regardless of the theory of liability asserted. It contained a Florida choice of law provision.[1]
*589 Where, as here, the parties execute an arbitration agreement in a transaction involving interstate commerce, the Federal Arbitration Act (“FAA”), 9 U.S.C. § 1, is implicated. See Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. 468, 474-79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); see also Preston v. Ferrer, 552 U.S. 346, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); Powertel, Inc. v. Bexley, 743 So.2d 570, 573 (Fla. 1st DCA 1999).
Parties are allowed to choose state law for “the rules under which ... arbitration will be conducted.” Volt, 489 U.S. at 479, 109 S.Ct. 1248. By their Florida choice of law, the parties have specified the procedures of the Florida Arbitration Code as being applicable to this transaction. See Ch. 682, Fla. Stat. (2004). While this is permissible, the arbitration agreements in this case must still be enforced in a way which is consistent with the substantive provisions of the FAA.
Under the FAA, an arbitration agreement in a transaction involving interstate commerce “shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C. § 2. “Section 2 prohibits the states from placing greater restrictions on arbitration clauses than those that apply to other contract prowsions.” Powertel, 743 So.2d at 573. “A court must enforce an arbitration agreement according to its terms, absent an established ground for setting aside the contractual provision, such as fraud, duress, coercion, or unconscionability.” 1 Domke, supra, § 1:2, at 1-6.
The First District has explained:
Although the states may not impose special limitations on the use of arbitration clauses, the validity of an arbitration clause is nevertheless an issue of state contract law. Section 2 states that an arbitration clause can be invalidated on such grounds as exist “at law or in equity for the revocation of a contract.” Thus, an arbitration clause can be defeated by any defense existing under the state law of contracts. As the Court explained in [Doctor’s Associates, Inc. v.] Casarotto, [517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ], “generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening [the Federal Arbitration Act].” 517 U.S. at 687, 116 S.Ct. 1652[.]
Powertel, 743 So.2d at 574.
Although by no means an exclusive list, the Fourth District has identified two analytical frameworks that have been used by courts “when confronted with this issue [a challenge to the validity of an arbitration agreement]: (1) whether the arbitration clause is void as a matter of law because it defeats the remedial purpose of the applicable statute, or (2) whether the arbitration clause is unconscionable.” Fonte v. AT & T Wireless Servs., Inc., 903 So.2d 1019, 1023 (Fla. 4th DCA 2005); Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296, 297-99 (Fla. 4th DCA 2005) (en banc). By the phrase “defeats the remedial purpose of the applicable statute,” the Fonte court referred to an arbitration clause that eliminates substantive rights guaranteed by a remedial statute. 903 So.2d at 1024. The trial court applied both approaches in this case.
B.
The buyers attacked the Agreement in part on the ground that it was *590 unconscionable. Our court has said that, to invalidate a contract for unconscionability “under Florida law, a court must find that the contract is both procedurally and substantively unconscionable.” Murphy v. Courtesy Ford, L.L.C., 944 So.2d 1131, 1134 (Fla. 3d DCA 2006).[2] For procedural unconscionability, “a court must look to the manner in which the contract was entered into and consider factors such as whether the complaining party had a meaningful choice at the time the contract was entered into.” Id. “Courts consider ‘whether the complaining party had a realistic opportunity to bargain regarding the terms of the contract or whether the terms were merely presented on a ‘take-it-or leave-it’ basis; and whether he or she had a reasonable opportunity to understand the terms of the contract.’ ” Id.
In this case, the buyers responded to the dealer’s advertisement on Spanish-language television. The dealer’s sales staff understood that the buyers did not speak or read English and conducted the entire transaction in Spanish. The dealer’s personnel testified that although the contracts were written in English, they reviewed the content of the contracts with the buyers in Spanish. The buyers testified that in their conversations with the dealer’s personnel, arbitration was never mentioned. The trial court found the buyers to be credible and concluded that either arbitration was not mentioned, or if mentioned, was not explained in an understandable way.
The dealer argues that a party to a contract is bound to the agreement, even if he or she did not read it. See Estate of Etting v. Regents Park at Aventura, Inc., 891 So.2d 558 (Fla. 3d DCA 2004). While that is true as a general proposition, in this case the dealer’s personnel undertook to explain the contracts to the buyers in Spanish. Having done so, they were obliged to do so accurately. Cf. Clay Elec. Coop., Inc. v. Johnson, 873 So.2d 1182, 1186 (Fla.2003) (in the context of tort law, “[w]henever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service ... thereby assumes a duty to act carefully and to not put others at an undue risk of harm”).
As the trial court order states, “It has long been recognized in this state that if one is induced not to read a contract — or, as here, not to obtain outside assistance in reading the contract — and he signs an entirely different paper from what the opposing party has represented that paper to be, the party so signing is entitled to be relieved of the obligations which he has unknowingly assumed.” Order at 7 (citing Pepple v. Rogers, 104 Fla. 462, 140 So. 205, 208 (1932)). Alternatively, if arbitration was mention, it was not mentioned in an understandable way. Under either analysis, procedural unconscionability was established.
The trial court found that the Agreement was substantively unconscionable because it contained a waiver of the right to seek punitive damages. The complaint contains a claim for fraud, and punitive damages are available in judicial proceedings where there is a fraud claim. See § 768.72, Fla. Stat. (2004); First Interstate Dev. Corp. v. Ablanedo, 511 So.2d 536, 537-38 (Fla.1987). We agree with the trial court that it is unconscionable to employ an arbitration agreement to obtain a waiver of rights to which the signatory would otherwise be entitled under common law or statutory law. See Romano v. Manor Care, Inc., 861 So.2d 59, 61-64 (Fla. 4th DCA 2003) (punitive damages); see also *591 Powertel, 743 So.2d at 576 (“One indicator of substantive unconscionability is that the agreement requires the customer to give up other legal remedies.”).
The dealer contends that the ban on punitive damages is not a basis to refuse enforcement of the entire Agreement. The dealer points out that the Agreement contains a severability clause and that the ban on punitive damages can be severed. The dealer raised this issue in the trial court, and it is true that the waiver of punitive damages could be severed.
The buyers counter that the Agreement should not be enforced because it is imper-missibly one-sided. By way of background, the Agreement contains an exemption from arbitration which allows either party to file a small claims action. The small claims limit is $5000. Fla. Sm. Cl. R. 7.010(b). This provision is even-handed and unobjectionable.
The Agreement contains an additional exemption, however, for an action by the dealer “to obtain a deficiency judgment after repossession.” The Agreement provides, in other words, that the dealer may resort to court action to obtain monetary relief against the customer in excess of the $5000 small claims limit, while the customer has no corresponding right to go to court to obtain monetary relief over $5000 against the dealer. “Where one party is bound to arbitration of its claims but the other is not, there can be substantive un-conscionability.” Palm Beach Motor Cars Ltd. v. Jeffries, 885 So.2d 990, 992 (Fla. 4th DCA 2004); see also Bellsouth Mobility LLC v. Christopher, 819 So.2d 171, 173 (Fla. 4th DCA 2002).
The one-sided nature of the exception is not subject to correction by use of the severability clause. The severability clause states, “If any part of this agreement to arbitrate is deemed invalid under applicable law, all other parts will nevertheless remain enforceable.” The dealer has reserved to itself the right to seek certain money damages in court, while allowing the buyers the right to seek money damages in court for no more than $5000. The dealer’s self-exemption appears to be valid and enforceable. That being so, the severability clause does not apply here, and the Agreement operates in a substantively unconscionable way. We therefore affirm the order denying enforcement of the Agreement.
III.
The parties also executed a Retail Installment Contract which contains an Arbitration Clause (the “Clause”). The Retail Installment Contract sets forth the financing terms for the van being purchased. The Clause provided that any dispute would be arbitrated and that the person first demanding arbitration could choose the American Arbitration Association, or JAMS, or the National Arbitration Forum. The Clause states that it is governed by the FAA.
The trial court invalidated the Clause, saying that an arbitrator is not suited to enforce and oversee injunctive relief. In Count IV of the buyers’ complaint, the buyers sought to enjoin the dealer from committing alleged deceptive and unfair trade practices. The buyers requested the injunction under FDUTPA, which states that anyone aggrieved by violation of FDUTPA “may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.” § 501.211(1), Fla. Stat. (2004). The buyers also requested declaratory relief, which is available under the statute. Id.
On the court’s own motion, this court directed the parties to address the ques *592 tion whether a claim for declaratory or injunctive relief was arbitrable under the Clause. The question arises because the Clause states, “The arbitration award shall be issued without a written opinion.”
In their responses, the parties agree that an award for injunctive and declaratory relief cannot be accomplished without a written opinion. The dealer argues that the correct remedy is for this court to sever the ban on a written opinion. The buyers maintain that there is no need to modify the contractual provision and that, as written, the claims for declaratory and injunctive relief are not arbitrable.
The severability clause states, “If any provision of the agreement is found to be unenforceable or invalid, that provision shall be severed and the remaining provisions shall be given full effect as if the severed provision had not been included.” The parties do not say that the ban on a written opinion is unenforceable or invalid. Given the existence of that provision, however, the claims for declaratory and in-junctive relief are not arbitrable. We, therefore, conclude that the claims for declaratory and injunctive relief are not included within the scope of the Clause, and those claims are to be resolved by the trial court.[3]
The buyers also maintain that the Clause is unconscionable because it contains a waiver of the right to bring a class action or class arbitration. However, in his testimony Roberto Basulto disclaimed any intention to bring a class action, and the complaint is not a class action complaint, so we need not reach the class action issue under the circumstances of this case.
For the stated reasons, we affirm the trial court’s ruling holding that the Agreement is unenforceable. With regard to the Clause, we affirm the trial court’s order insofar as it declined to enforce arbitration of the claims for declaratory and injunctive relief. We reverse the trial court’s order insofar as it declined to enforce the Clause with respect to the buyers’ claims for monetary relief.
Affirmed in part, reversed in part and remanded for further proceedings herewith.[4]

. The parties signed the form but did not fill in the blank designating the state. It is clear *589 from the context that the contract is properly viewed as referring to the State of Florida.

. See infra n. 4.

. In view of this ruling, we do not need to reach the question whether an injunction under FDUTPA to benefit the general public is beyond the power of an arbitrator to grant. See Broughton v. Cigna Healthplans of Cal., 21 Cal.4th 1066, 90 Cal.Rptr.2d 334, 988 P.2d 67 (1999); see also Cruz v. PacifiCare Health Sys., Inc., 30 Cal.4th 303, 133 Cal.Rptr.2d 58, 66 P.3d 1157, 1159 (2003) (applying Broughton to claim for injunction against unfair competition under California's Business and Professions Code); but see Arriaga v. Cross Country Bank, 163 F.Supp.2d 1189 (S.D.Cal.2001); Brasington v. EMC Corp., 855 So.2d 1212, 1217 (Fla. 1st DCA 2003); Stewart Agency, Inc. v. Robinson, 855 So.2d 726, 728 (Fla. 4th DCA 2003).

. Speaking for himself, the writer of this opinion suggests that in an appropriate future case, this court should reconsider Murphy v. Courtesy Ford, L.L.C., 944 So.2d 1131 (Fla. 3d DCA 2006).
In Murphy, this court said, “To invalidate a contract under Florida law, a court must find that the contract is both procedurally and substantively unconscionable.” Id. at 1134 (citing Powertel, Inc. v. Bexley, 743 So.2d 570, 574 (Fla. 1st DCA 1999)) (emphasis added). Although the requirement for both procedural and substantive unconscionability has been repeated in a number of arbitration cases in recent years, I respectfully suggest that holding is (a) illogical, and (b) inconsistent with this court’s decision in Steinhardt v. Rudolph, 422 So.2d 884 (Fla. 3d DCA 1982).
In Steinhardt, Judge Hubbart explained;
The law in Florida is clear that an unconscionable contract or an unconscionable term therein will not be enforced by a court of equity. "It seems to be established by the authorities that where it is perfectly plain to the court that one party [to a contract] has overreached the other and has gained an unjust and undeserved advantage which it would be inequitable to permit him *593 to enforce, that a court of equity will not hesitate to interfere, even though the victimized parties owe their predicament largely to their own stupidity and carelessness.”
Id. at 889 (citing Peacock Hotel, Inc. v. Shipman, 103 Fla. 633, 138 So. 44, 46 (1931)).
Judge Hubbart explained that the Restatement (Second) of Contracts does not attempt to define unconscionability in procedural-substantive terms, and "the Florida decisions concerning unconscionability as applied to a mortgage foreclosure case are entirely devoid of this (procedural-substantive] analysis.” 422 So.2d at 889. The Steinhardt panel held: "This procedural-substantive analysis is ... only a general approach to the unconsciona-bility question and is not a rule of law.” Id. (emphasis added). Instead, procedural un-conscionability is merely one factor to be considered — not a required element. Clearly, if a contract is sufficiently inequitable to meet the test of substantive unconscionability, then it should not be enforced.
I do not fault the panel in Murphy because there is no indication that anyone made the argument advanced here, or pointed out this court’s analysis in Steinhardt. This is, however, an issue which should be addressed in an appropriate case in the future. It need not be addressed in this case because in this case the Murphy test was satisfied.
Assuming arguendo that procedural uncon-scionability is required, that condition should be deemed to be satisfied where, as here, the arbitration clause is a non-negotiated provision contained in a pre-printed form. See Pasteur Health Plan, Inc. v. Salazar, 658 So.2d 543, 544 (Fla. 3d DCA 1995) (adhesion contract means "a standardized contract, which, imposed and drafted by the party of superior bargaining strength ... relegates to the subscribing party ... only the opportunity to adhere to the contract or reject it.”); Black’s Law Dictionary 342 (8th ed. 2004) (adhesion contract is a "standard-form contract prepared by one party, to be signed by the party in a weaker position, usu. a consumer, who adheres to the contract with little choice about the terms”)