855 So.2d 1212 (2003)
Grace BRASINGTON, Appellant,
v.
EMC CORPORATION, Appellee.
No. 02-3117.
District Court of Appeal of Florida, First District.
October 13, 2003.
*1213 Kent Spriggs of Spriggs & Davis, Tallahassee, for Appellant.
*1214 John A. DeVault, III, and Kevin B. Cook of Bedell, Dittmar, DeVault, Pillans & Coxe, Jacksonville, for Appellee.
PADOVANO, J.
Grace Brasington, the plaintiff in the trial court, appeals a nonfinal order compelling arbitration. We conclude that the statutory remedies that would be available to the plaintiff in court are likewise available to her in arbitration, and that the arbitration agreement at issue is not unconscionable. For these reasons, we affirm.
The defendant, EMC Corporation, employed the plaintiff as a Business Development Manager beginning on January 24, 2000. On that date, the parties signed a contract entitled "Key Employee Agreement." Section 8 of the agreement contains an arbitration clause, which states in material part that "binding arbitration shall be the sole and exclusive remedy for resolving any dispute arising out of or relating to your employment by the company, including but not limited to your compensation, any alleged discrimination or termination of employment...." The agreement provides further that arbitration shall be conducted according to the company's policy.
This policy authorizes two alternative methods of choosing the arbitrator. EMC may designate the arbitrator unilaterally from its list of neutral arbitrators, or the employee may elect to participate in the selection of the arbitrator. Each party must bear its own attorney's fees, expert witness fees, and other costs of arbitration. If EMC unilaterally selects the arbitrator, it will, at the employee's request, pay the arbitrator's fees in full. In contrast, if the employee chooses to participate in the selection of the arbitrator, she must pay half the arbitrator's fee.
The plaintiff's employment was terminated on August 30, 2001, and she subsequently filed suit against EMC alleging employment discrimination in violation of the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes and the Florida Whistleblower Act, sections 448.102(3) and 448.103, Florida Statutes. The complaint alleged that EMC discriminated against her on the basis of gender, that the company maintained a national pattern of discrimination against women at the level of District Sales Manager and above, and that it retaliated against her for having resisted the gender bias.
The complaint also alleged that the plaintiff would not have been demoted and fired had she not opposed and reported EMC's illegal practice of "channel stuffing." Channel stuffing is the practice of reporting unconsummated sales efforts as actual sales. It creates fictitious earnings and a false picture of the company's profitability and it violates the Securities and Exchange Act of 1934.
EMC moved to compel arbitration of the claims pursuant to the employment agreement, and its motion was granted. On June 20, 2002, the trial judge entered an order compelling arbitration and staying the litigation in the circuit court. The judge determined that the dispute involved the plaintiff's employment and that she was compelled by the agreement she made with her employer to submit her claims to binding arbitration. This order is the subject of the present appeal.
We have jurisdiction to hear an appeal from a nonfinal order determining entitlement to arbitration. See Fla.R.App.P. 9.130(a)(3)(C)(iv); Hill v. Ray Carter Auto *1215 Sales, Inc., 745 So.2d 1136 (Fla. 1st DCA 1999). The order at issue turns on the validity of an arbitration clause in a contract. Consequently, the appeal presents a question of law which is reviewable by the de novo standard of review. See Florida Title Loans, Inc. v. Christie, 770 So.2d 750, 751 (Fla. 1st DCA 2000); Avid Engineering, Inc. v. Orlando Marketplace Ltd., 809 So.2d 1 (Fla. 5th DCA 2002).
At the outset we recognize that agreements to arbitrate are favored by the courts. See Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999); Roe v. Amica Mutual Ins. Co., 533 So.2d 279, 281 (Fla.1988); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Congress gave expression to this policy by enacting the Federal Arbitration Act, the primary goal of which is to ensure the enforcement of privately negotiated arbitration agreements. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).
Arbitration is often employed as an alternative means of resolving contract disputes, but it can also be used as a method of resolving statutory claims. An agreement to arbitrate statutory claims is enforceable if it provides an adequate mechanism for pursuing statutory rights and does not defeat the remedial purpose of the statute under which the claim is brought. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The plaintiff should be able to obtain the same relief via arbitration as would be available in court. As the United States Supreme Court explained in Mitsubishi:
By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.... Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.
473 U.S. at 628, 105 S.Ct. 3346. The parties to a contract may agree to arbitrate any statutory claims that may arise between them, including federal or state civil rights claims. See id. at 637, 105 S.Ct. 3346; Gilmer, 500 U.S. at 28, 111 S.Ct. 1647.
The plaintiff contends that the arbitration clause is unenforceable, because it forces an employee who participates in the selection of the arbitrator to pay half of the arbitrator's fee, and because it requires her to pay her own attorney's fees and expenses of arbitration. She argues that these provisions deprive her of her statutory right to fee-shifting under the Florida Civil Rights Act and the Florida Whistleblower Act. This argument is based primarily on Flyer Printing Co., Inc. v. Hill, 805 So.2d 829 (Fla. 2d DCA 2001), a decision invalidating an arbitration agreement on the ground that it required the employee to pay part of the costs.
Although the decision in Flyer Printing appears to support the plaintiff's position, there are two reasons why it does not compel reversal of the order in this case. First, we do not know whether the arbitration clause in Flyer Printing allowed the employee an option that would avoid the *1216 obligation to share the arbitrator's fee. Here, the plaintiff would be required to pay half of the fee only if she elects to participate in the selection of the arbitrator. Otherwise the employer must pay the fee at the employee's request. Second, the Flyer Printing opinion was based on a federal decision that has now been vacated.
Until very recently, the federal appeals courts were in conflict over the effect of a mandatory fee-splitting clause in an arbitration agreement.[1] Some circuits held that such a clause automatically invalidated the arbitration agreement. Others held that a fee-splitting clause did not render an arbitration agreement unenforceable per se; rather, these courts employed a case-by-case approach, requiring the complaining party to allege and prove that the amount of the fee would be so high as to preclude the party from vindicating his statutory rights.
The Eleventh Circuit Court of Appeals previously adopted the per se rule, taking the position that the mere existence of a fee-splitting provision was enough to invalidate an arbitration agreement. See Perez v. Globe Airport Sec. Servs., Inc., 253 F.3d 1280 (11th Cir.2001). However, the court later vacated this decision on a joint motion for dismissal of the appeal. Although the Perez opinion is no longer in force, it was the law in the Eleventh Circuit at the time the Second District Court of Appeal decided the Flyer Printing case. The Second District relied on Perez to invalidate the arbitration clause in that case.
The issue came up again in Musnick v. King Motor Company of Fort Lauderdale, 325 F.3d 1255 (11th Cir.2003), and this time the Eleventh Circuit rejected the per se approach in favor of a case-by-case analysis. The court held that the existence of a fee-splitting provision does not automatically render an arbitration agreement unenforceable. Rather, the court aligned itself with the majority of other circuits in the nation and held that the party seeking to avoid arbitration has the burden of proving that the obligation to share arbitration expenses would effectively deny remedies available by statute.
In the absence of such a showing, the court must enforce the agreement to arbitrate. This conclusion is supported by the Supreme Court's decision in Green Tree Financial Corp.Alabama v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Even though the "existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum," id. 531 U.S. at 90, 121 S.Ct. 513 (emphasis supplied), the Court in Green Tree stressed that the party seeking to avoid arbitration has the burden of making a threshold showing of the likelihood of prohibitive costs.
The plaintiff in this case has not alleged that the expenses of arbitration would be so high as to prevent her from pursuing her claims. Furthermore, she will have an opportunity to present issues relating to her expenses, regardless of the outcome of the arbitration. If the plaintiff prevails in arbitration, she will be able to recover her costs and fees. The arbitration policy states that the arbitrator may grant "any remedy or relief that would otherwise be *1217 awarded under the law." Hence, the responsibility for costs and fees could shift in arbitration, just as it would in court. If the plaintiff does not prevail in arbitration and believes that her costs and fees were so high as to prevent her from exercising her statutory rights, she may appeal the ruling to the circuit court. See § 44.104(10), Fla. Stat. (2003). In either event, the plaintiff will have an adequate remedy.
On a related point, the plaintiff also contends that arbitration would prevent her from receiving the kind of systemic injunctive relief that is available under the applicable statutes. Among the remedies the plaintiff seeks is an injunction forbidding EMC from practicing company-wide gender discrimination (under the Florida Civil Rights Act) and channel-stuffing (under the Florida Whistleblower Act). Although she has not requested class certification and is bringing her claims only in her individual capacity, a court could still grant injunctive relief that would affect all similarly situated persons.
Systemic injunctive relief may be appropriate in a nonclass case if a pattern of discrimination is proven. See Carmichael v. Birmingham Saw Works, 738 F.2d 1126 (11th Cir.1984); Cox v. American Cast Iron Pipe Co., 784 F.2d 1546 (11th Cir.1986), cert. denied, 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). For example, a court could order an employer to refrain from gender discrimination in a Title VII case, even though the order would have a broad impact beyond adjudicating the rights of the immediate parties. See Meyer v. Brown & Root Constr. Co., 661 F.2d 369 (5th Cir.1981) (recognizing that systemic injunctive relief might be appropriate under federal civil rights laws even if the case is not maintained as a class action). Although the plaintiff's claims are based on the Florida Civil Rights Act, not Title VII, the parallel nature of these two statutes compels a conclusion that she could obtain systemic injunctive relief.
The plaintiff contends that she would not be able to obtain broad injunctive relief in arbitration, because EMC's arbitration policy provides that the arbitrator may not change the company's practices or procedures. Given this limitation, she argues, the arbitrator would have no authority to enjoin EMC from the practices of gender discrimination and channel-stuffing. In response, EMC points out that the arbitration policy also states that the arbitrator may grant "any remedy or relief that could otherwise be awarded under law."
Arbitrators regularly award injunctive relief on behalf of claimants, see Gilmer, 500 U.S. at 32, 111 S.Ct. 1647 (noting that arbitrators do have the power to fashion equitable relief), and nothing about the nature of this dispute would prevent it here. While it is true that an arbitrator could not change EMC's practices or procedures, there is nothing in the arbitration policy to suggest an arbitrator lacks authority to enjoin illegal practices or procedures. If that were the case, any company could insert similar language in its employment contracts and effectively grant itself carte blanche immunity to engage in any number of illegal practices.
The plaintiff also seeks to avoid the arbitration agreement on the ground that it is unconscionable. This issue is governed by the law of contracts. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); Powertel v. Bexley, 743 So.2d 570 (Fla. 1st DCA 1999). Under Florida *1218 law, a contract may be found unconscionable and therefore unenforceable if the court determines that it is both substantively and procedurally unconscionable. See Belcher v. Kier, 558 So.2d 1039 (Fla. 2d DCA 1990); Complete Interiors v. Behan, 558 So.2d 48 (Fla. 5th DCA 1990).
Substantive unconscionability requires an evaluation of the contract and its essential requirements. In contrast, procedural unconscionability pertains to the circumstances in which the contract was made. As we explained in Powertel, "the procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." 743 So.2d at 574.
The plaintiff contends that the arbitration clause in this case is procedurally unconscionable because the terms of the arbitration policy were not disclosed to her when she signed the Key Employment Agreement. Referring to her own affidavit in the record, as well as that of her fellow employee, Dana Jacobowitz, she claims that she was not told how to find out about dispute resolution procedures.
Although the arbitration policy was not provided to employees as a matter of course, it was identified in the arbitration clause, and the plaintiff could have easily obtained a copy of it. The arbitration clause was not located in an inconspicuous part of the employment agreement. Nor was it written in fine print. To the contrary, the arbitration clause is the final paragraph of the employment agreement and is printed just above the line for the plaintiff's signature. It is headed "Arbitration," in bold print and underlined, and it plainly states that disputes relating to or arising out of the employment are subject to arbitration.
If the plaintiff wished to have advance knowledge of the arbitration procedures, she could have requested that the company provide her with a copy of the arbitration policy when she signed the agreement. The plaintiff is a well-educated professional business woman. She had a full week to examine the employment agreement or to have it evaluated by a lawyer. EMC even advised her in writing that she should seek the advice of a lawyer before signing the agreement.
Under these circumstances, the plaintiff is not in a position to rely on her ignorance of the company arbitration policy to support a claim that the arbitration clause is procedurally unconscionable. Because we conclude that the arbitration agreement is not procedurally unconscionable, we need not consider the arguments the plaintiff has made concerning the substantive component of unconscionability.
In summary, the plaintiff has not shown that the arbitration agreement forces her to relinquish any statutory remedy that would be available to her in court and she has not shown that the agreement is unconscionable. The plaintiff made a number of other arguments on appeal and we recognize that we have not addressed all of them in this opinion. However, we have considered all of the arguments presented in the briefs and we find no reversible error.
Affirmed.
BARFIELD and KAHN, JJ., concur.
NOTES
[1] For a discussion of the split of authority on fee-shifting provisions in arbitration agreements, see Musnick v. King Motor Company of Fort Lauderdale, 325 F.3d 1255 (11th Cir. 2003) at 1257-58.