NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DONALD HOCHBAUM, by and through )
JOANN HOCHBAUM, Attorney-in-Fact, )
)
    Appellant, )
)
v. )    Case No. 2D16-89
)
PALM GARDEN OF WINTER HAVEN, LLC;)
PALM GARDEN HEALTHCARE )
HOLDINGS, LLC; PALM HEALTHCARE )
MANAGEMENT, LLC; SUMMIT CARE )
CONSULTING, INC.; SUMMIT CARE, )
INC.; SUMMIT CARE II, INC.; CYPRESS )
HEALTH GROUP, LLC; CYPRESS )
MASTER HOLDING, LLC; and HC )
NAVIGATOR, LLC a/k/a HEALTH CARE )
NAVIGATOR, LLC (as to PALM GARDEN )
OF WINTER HAVEN), )
)
    Appellees. )
    ————————————————————— )

Opinion filed October 5, 2016.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Polk County;
Mark Carpinini, Judge.

Isaac R. Ruiz-Carus and Megan L. Gisclar
of Wilkes & McHugh, P.A., Tampa, for
Appellant.

Kirsten K. Ullman and Amy D. Prevatt of
Lewis Brisbois Bisgaard & Smith, LLP,
Tampa, for Appellees.

MORRIS, Judge.

Joann Hochbaum, on behalf of her deceased husband Donald Hochbaum, appeals an order granting a motion to compel arbitration filed by defendants Palm Garden of Winter Haven, LLC; Palm Garden Healthcare Holdings, LLC; Palm Garden Healthcare Management, LLC, Summit Care II, Inc.; Summit Care Consulting, Inc.; and Summit Care, Inc. (collectively referred to as the nursing home defendants). We conclude that the arbitration agreements at issue contain an attorneys' fees provision that violates public policy but that the offending provision may be severed from the agreements. Accordingly, we affirm the order compelling arbitration but remand for the trial court to strike the attorneys' fees provision from the arbitration agreements.

In 2015, Hochbaum filed a three-count complaint against the nursing home defendants. Count one alleged negligence in violation of section 400.022, Florida Statutes (2013), count two alleged a breach of fiduciary duty, and count three alleged violations of section 415.1111, Florida Statutes (2013). The nursing home defendants filed a motion to compel arbitration, arguing that Hochbaum, as attorney-in-fact for her husband, had signed arbitration agreements in connection with her husband's residency at the nursing home.

The trial court held a hearing on the nursing home defendants' motion to compel arbitration on December 1, 2015. The nursing home defendants relied on three arbitration agreements signed by Hochbaum in 2013 and 2014.[1] Hochbaum argued

---

[1]On July 26, 2013, Hochbaum signed an Optional Arbitration Agreement and a separate Resident and Facility Arbitration Agreement. On January 14, 2014, she

that all three arbitration agreements violate public policy because they require each party to pay for their own attorneys' fees, thereby eliminating the fee-shifting provision of section 415.1111. The trial court then inquired about procedural and substantive unconscionability, and Hochbaum argued that the agreements are both unconscionable and void as against public policy. The trial court ruled that Hochbaum had not established unconscionability and granted the nursing home defendants' motion to compel arbitration.

Hochbaum first argues on appeal that the arbitration agreements are unenforceable because they violate public policy by limiting Hochbaum's statutory right to attorneys' fees under section 415.1111. In her complaint, Hochbaum asserted a count for violation of section 415.1111, alleging that the nursing home defendants' "acts or omissions constitute exploitation of a vulnerable adult in violation of" the statute. Section 415.1111 provides that "[a] vulnerable adult who has been abused, neglected, or exploited as specified in this chapter has a cause of action against any perpetrator and may recover actual and punitive damages for such abuse, neglect, or exploitation." It also provides that "[a] party who prevails in any such action may be entitled to recover reasonable attorney's fees, costs of the action, and damages." Hochbaum claims that this remedial provision is eliminated by the language of the arbitration agreements requiring that each party pay their own attorneys' fees and that the agreements are void as against public policy because they defeat the remedial purpose of the statute.

The trial court mistakenly understood the issue to be one of unconscionability and rejected Hochbaum's challenge to the nursing home defendants'

---

signed an Optional Arbitration Agreement. All three agreements provide that "[e]ach party shall be responsible for their own attorneys' fees."

motion to compel arbitration.  But the question of whether an agreement is unconscionable is distinct from the question of whether it is void as against public policy.  See Bland ex rel. Coker v. Health Care & Ret. Corp. of Am., 927 So. 2d 252, 257 (Fla. 2d DCA 2006), abrogated in part on other grounds by Basulto v. Hialeah Auto., 141 So. 3d 1145, 1159-60 (Fla. 2014), and Shotts v. OP Winter Haven, Inc., 86 So. 3d 456, 474 (Fla. 2011); Fonte v. AT&T Wireless Servs., Inc., 903 So. 2d 1019, 1023 (Fla. 4th DCA 2005).  Hochbaum's main argument at the hearing was that the arbitration agreements are void as against public policy because they defeat the remedial purpose of section 415.1111.

"A remedial statute is designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good.  It is also defined as [a] statute giving a party a mode of remedy for a wrong, where he had none, or a different one, before."  Fonte, 903 So. 2d at 1024 (alteration in original) (quoting Adams v. Wright, 403 So. 2d 391, 394 (Fla. 1981)).  "[W]hen an arbitration agreement contains provisions that defeat the remedial purpose of the statute, the agreement is not enforceable."  Flyer Printing Co. v. Hills, 805 So. 2d 829, 831 (Fla. 2d DCA 2001).

In Shotts, 86 So. 3d at 474, the supreme court held that provisions in an arbitration agreement requiring arbitration to be conducted in accordance with certain arbitration rules and prohibiting an award of punitive damages violated public policy because the provisions limited statutory remedies created by the legislature under the Nursing Home Resident's Rights Act.  The court recognized that in enacting the Act, the legislature created a civil cause of action for violations of nursing home residents' rights; the legislature set no cap on pain and suffering damages and provided for an award of

punitive damages.  Id. (relying on Romano v. Manor Care, Inc., 861 So. 2d 59, 62-63 (Fla. 4th DCA 2003)).  "In light of the recognized need for these remedies and the salutary purpose they serve," the court "conclude[d] that any arbitration agreement that substantially diminishes or circumvents these remedies stands in violation of the public policy of the State of Florida and is unenforceable."  Id.; see also Gessa v. Manor Care of Fla., Inc., 86 So. 3d 484, 493 (Fla. 2011) (holding that limitations on liability in arbitration agreement, in the forms of a cap on noneconomic damages and a waiver of punitive damages, "*directly* frustrate the remedies created by the statute" and thus violate public policy).

In enacting the Adult Protective Services Act in chapter 415, the legislature "recognize[d] that there are many persons in this state who, because of age or disability, are in need of protective services."  § 415.101(2).  The legislature intended "to provide for the detection and correction of abuse, neglect, and exploitation through social services and criminal investigations and to establish a program of protective services for all vulnerable adults in need of them."  Id.  Section 415.1111 creates a civil cause of action for abuse, neglect, and exploitation committed against vulnerable adults, and it provides for actual and punitive damages as well as prevailing party fees and costs.  Thus, the Act under which Hochbaum seeks relief in count III is remedial in nature.

This court has held that an arbitration agreement that limits the statutory remedy of attorneys' fees violates public policy.  In Flyer Printing Co., the arbitration agreement "required the parties to equally bear the costs of the arbitration and arbitrator's fees."  805 So. 2d at 831.  But the statutes on which the plaintiff's claims

were based "permit[ted] the prevailing party to seek recovery of all her fees and costs." Id. (citing Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k), and the Florida Civil Rights Act, § 760.11(5), Fla. Stat. (2000)).  This court held that the agreement violated public policy because "[t]he agreement contravened [the plaintiff's] statutory right to seek a full award of her fees and costs under" the statutes, "thus defeating the remedial purpose of those statutes."  Id. at 833.

The arbitration agreements in this case require the parties to equally bear the fees associated with arbitration, in contravention of Hochbaum's statutory right to seek a full award of her fees under the prevailing party attorneys' fees provision of section 415.1111.  Thus, according to Flyer Printing Co., this provision of the arbitration agreements violates public policy.[2]

The nursing home defendants argue that the arbitrator should decide Hochbaum's public policy concerns.  But in Shotts, the supreme court held that "it is for the court, not the arbitrator, to determine whether an arbitration agreement 'is unenforceable on public policy grounds,' " 86 So. 3d at 459 (quoting Global Travel

---

[2]We note that the First District in Brasington v. EMC Corp., 855 So. 2d 1212 (Fla. 1st DCA 2003), questioned this court's opinion in Flyer Printing Co.  The Brasington court stated that the Flyer Printing Co. decision was based on a federal decision that was no longer in force because the federal court vacated the decision on a joint motion for dismissal, referring to Perez v. Globe Airport Security Services, Inc., 253 F.3d 1280 (11th Cir. 2001), vacated by 294 F.3d 1275 (11th Cir. 2002).  855 So. 2d at 1216.  However, this court in Hernandez v. Colonial Grocers, Inc., 124 So. 3d 408, 410 (Fla. 2d DCA 2013), rejected the argument that the fate of the Perez decision affected the holding of Flyer Printing Co.  The Hernandez court clarified that the Flyer Printing Co. decision was based on the rationale set forth in Paladino v. Avnet Computer Technologies, Inc., 134 F.3d 1054 (11th Cir. 1998), that an arbitration agreement that defeats a statute's remedial purpose is not enforceable.  124 So. 3d at 410.  The Hernandez court held that the Flyer Printing Co. decision "is still the law of the Second District."  Id.

Mktg., Inc. v. Shea, 908 So. 2d 392, 398 (Fla. 2005)), thus abrogating this court's decisions to the contrary in Bland, 927 So. 2d 252, and Rollins, Inc. v. Lighthouse Bay Holdings, Ltd., 898 So. 2d 86 (Fla. 2d DCA 2005).

We next consider whether the offensive provision may be severed from the agreements. Hochbaum argues that the provision cannot be severed from the agreements in order to preserve the enforceability of the agreements because the agreements do not contain severability clauses and because severance of the offending provision would require the court to rewrite the parties' contracts.

Case law suggests that in order for an offending provision to be severed from an agreement, the agreement *should* contain a severability clause. See LTCSP-St. Petersburg, LLC v. Robinson, 96 So. 3d 986, 988 (Fla. 2d DCA 2012) (holding that offending limitation-of-liability provision could be severed from arbitration agreement because agreement contained "a very broad severability clause"); Presidential Leasing, Inc. v. Krout, 896 So. 2d 938, 942 (Fla. 5th DCA 2005) (holding that provision in arbitration agreement violated public policy and could not be severed from agreement because severance argument had not been made below and the agreement did not contain a severability clause).

However, recent supreme court cases indicate that the existence of a severability clause is not dispositive of the issue. In Gessa, the arbitration agreement contained limitations of remedies that violated public policy. The agreement had no severability clause, but the court nonetheless analyzed whether the offensive provisions could be severed from the agreement. 86 So. 3d at 490. The court recognized that it

> had established a general standard for determining whether
> a contractual provision is severable from the whole, and that

standard provides in part: "[A] bilateral contract is severable where the illegal portion of the contract does not go to its essence, and where, with the illegal portion eliminated, there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other."

Gessa, 86 So. 3d at 490 (quoting Shotts, 86 So. 3d at 475).[3] The Gessa court applied that standard and concluded that "the limitation of liability provisions . . . , which place a $250,000 cap on noneconomic damages and waive punitive damages, are not severable from the remainder of the agreement" because they "constitute the financial heart of the agreement." 86 So. 3d at 490.

In Shotts, 86 So. 3d at 459, the arbitration agreement contained two provisions that violated public policy *and* a severability provision. But the Shotts court held that "the limitations of remedies provision in the present case that calls for the imposition of [specific arbitration] rules is not severable from the remainder of the agreement. Although the arbitration agreement in this case contains a severability clause, the [offending] provision goes to the very essence of the agreement." Id. at 478.

It is clear from both Shotts and Gessa that the existence of a severability clause is not determinative of whether an offending provision may be severed from the agreement and that the "controlling issue is whether an offending clause or clauses go to 'the very essence of the agreement.' " Estate of Yetta Novosett v. ARC Villages II, LLC, 189 So. 3d 895, 896 (Fla. 5th DCA 2016) (applying Shotts and Gessa and holding that limitation-of-liability provision capping non-economic damages and precluding

---

[3]The Shotts decision quoted and adopted the rationale in Local No. 234 v. Henley & Beckwith, Inc., 66 So. 2d 818 (Fla. 1953), which considered whether an offensive provision could be severed without any indication that the agreement at issue contained a severability clause.

punitive damages violated public policy and could not be severed, despite the existence of a severability clause, because the offending provision went to the essence of the agreement); see also Place at Vero Beach, Inc. v. Hanson, 953 So. 2d 773, 775 (Fla. 4th DCA 2007) (refusing to sever offending provision regarding which arbitration rules should apply, even though agreement contained severability clause, because the agreement was built around offending provision and to sever out offending provision would require court to rewrite terms of the agreement); Lacey v. Healthcare & Ret. Corp. of Am., 918 So. 2d 333, 335 (Fla. 4th DCA 2005) (refusing to sever an offending provision from arbitration clause because the "agreement contain[ed] no severance clause" and the offending provision went to the essence of the contract).  Rather, the court must determine whether the offending provision goes to the very essence of the agreement.

Here, the offending provision deals only with attorneys' fees.  The provision does not require the arbitration to be conducted in accordance with certain rules, and it does not limit the compensatory or punitive damages that Hochbaum may recover in arbitration.  Therefore, the offending provision is severable from each agreement because it does not go to the essence of the agreement.  See Estate of Deresh ex rel. Schneider v. FS Tenant Pool III Trust, 95 So. 3d 296 (Fla. 4th DCA 2012) (holding that provision limiting punitive damages, in violation of public policy, could be severed because it did not go to the heart of the arbitration agreement and because the arbitration panel could award other damages without limitation).[4]  It is clear from the

_____

[4]The arbitration agreement at issue in Estate of Deresh contained a severability clause, but as explained above, this fact is not dispositive of the issue. Even though the arbitration agreement contained such a clause, the court in Estate of

- 9 -

agreements in this case that the parties agreed to bind themselves to arbitration for any disputes arising out of Donald Hochbaum's residency at the nursing home. The attorneys' fees provision does not go to the heart of the contracts, and severance of the attorneys' fees provision would not require a drastic rewriting of the agreements and would preserve the intent of the parties to adjudicate their disputes in arbitration. <u>See id.</u>

Because the offending provision is severable from the arbitration agreements, we affirm the order compelling arbitration but remand with instructions to strike the attorneys' fees provision from the agreements.

Affirmed; remanded.

CASANUEVA and KELLY, JJ., Concur.

---

<u>Deresh</u> went on to consider whether the offending provision went to the heart of the agreement. 95 So. 3d at 301.