*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CV-0267

FLAGSTAR BANK, FSB, APPELLANT,

V.

ADVANCED FINANCIAL INVESTMENTS, LLC, *et al*., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2017-CA-000373-R(RP))

(Hon. Shana Frost Matini and Hon. Anthony C. Epstein, Motions Judges)

*Andrew J. Narod*, with whom *David T. Long, Jr.* was on the brief, for appellant.

*Richard J. Link* for appellee Advanced Financial Investments, LLC.

*Walter E. Gillcrist* for appellee New Hampshire House Condominium Unit Owners Association. *Anne K. Howard* and *Alane Tempchin* were on the brief.

(Argued April 11, 2024                    Decided April 10, 2025)

Before BECKWITH and DEAHL, *Associate Judges*, and RUIZ, *Senior Judge*.

DEAHL, *Associate Judge*: This is the latest in a line of cases about the effect of a condominium association's foreclosure on a super-priority lien under D.C. Code § 42-1903.13, prior to that provision's amendment in 2017. In this case, Salvador

Rivas bought a condo unit and financed his purchase through a mortgage loan from Flagstar Bank, secured by a deed of trust on the unit. Rivas fell behind on his condo association dues and the New Hampshire House Condominium Unit Owners Association (NHH) foreclosed on the unit in 2014 to recover them. The terms of the foreclosure sale indicated that the unit was being sold subject to Flagstar's first deed of trust of roughly $256,632, and Advanced Financial Investments, LLC (AFI) bought the unit for just $26,000, compared to its tax-assessed value of $237,930.

Several years later, with the mortgage loan in arrears, Flagstar filed its own suit for judicial foreclosure. The trial court dismissed that claim, reasoning that Flagstar's lien on the unit had been extinguished by NHH's prior foreclosure sale. *See Chase Plaza Condo. Ass'n, Inc. v. JPMorgan Chase Bank*, 98 A.3d 166, 172 (D.C. 2014) ("Any liens that are unsatisfied by [a condo association's] foreclosure-sale proceeds are extinguished."); *see also Liu v. U.S. Bank Nat'l Ass'n*, 179 A.3d 871, 874 (D.C. 2018) (That is true even where the terms of the sale state otherwise, because "a condominium association could not foreclose on its super-priority lien while leaving the property subject to the unsatisfied balance of the first mortgage or first deed of trust."). The trial court further reasoned that Flagstar did not timely plead its argument that the 2014 foreclosure sale was unconscionable and thus invalid, because it raised that point for the first time only in its amended complaint, filed more than three years after the foreclosure sale. The trial court also dismissed

Flagstar's remaining claims for declaratory relief, breach of fiduciary duty, and unjust enrichment—claims likewise raised for the first time in an amended complaint filed almost four years after the 2014 foreclosure sale—as time-barred.

Flagstar now appeals. It acknowledges, as our precedents make clear, that if NHH's foreclosure sale was valid then that sale extinguished Flagstar's lien on the unit. But Flagstar contends the trial court erred in dismissing its judicial foreclosure claim because it plausibly alleged that the condo association's sale was unconscionable and thus invalid. Appellees—NHH, AFI, and Rivas—disagree and argue that dismissal was proper. They also invite us to affirm on the alternative basis that even if dismissal was improper, they were entitled to summary judgment, as they requested in the trial court after discovery.

We agree with Flagstar that its judicial foreclosure claim was improperly dismissed; the trial court was wrong to conclude that Flagstar's unconscionability attack on the 2014 foreclosure sale was time-barred, because rebuttals to affirmative defenses (like this one) are not subject to any statute of limitations. *See Staab v. Wells Fargo Bank, N.A.,* 328 A.3d 391, 394-96 (D.C. 2024) ("new facts and arguments" raised "in response to [an] affirmative defense" are not subject to any limitations period).

We nonetheless affirm on the alternative ground that appellees were entitled to summary judgment on the judicial foreclosure claim. The 2014 foreclosure sale, as a matter of law, was not unconscionable. Our recent decision in *New Penn Fin., LLC v. Daniels* drives that conclusion. 319 A.3d 997, 1004 (D.C. 2024) ("The Superior Court correctly held as a matter of law that . . . the [$5,000] purchase price [for a property worth $131,380] was not unconscionably low" at the time of sale in 2014, given the first deed of trust encumbering the property and the legal uncertainty as to whether that lien would survive the sale). The only potential way to distinguish *New Penn* is that in this case, Flagstar's lien and its rough amount was specifically identified as one that would continue to encumber the property post-sale. For reasons we explain below, that is not a meaningful distinction and *New Penn*'s reasoning applies equally here. We therefore affirm the trial court's ruling resolving the judicial foreclosure count in appellees' favor.

We also reject Flagstar's remaining arguments, save one. We agree with Flagstar that its claim for unjust enrichment should not have been dismissed as time-barred, and that this claim cannot be alternatively resolved on summary judgment. We thus partially reverse and remand this unjust enrichment claim for trial, and otherwise affirm the trial court's judgment.

## I. Legal, Factual, and Procedural Background

This case arises against the backdrop of a series of decisions by this court over the past eleven years regarding the effect of condominium foreclosure sales on preexisting liens, so we begin with the essentials of that area of law. In 1991, the D.C. Council passed a statute giving condominium associations a "super-priority lien for [six months' worth of] condominium assessments," *Chase Plaza*, 98 A.3d at 174 (citing D.C. Code § 42-1903.13(a)(2)), meaning their liens for up to six months of unpaid dues had priority even over any first deed of trust encumbering the property. More than two decades later, we issued the first in a series of opinions discussing the legal effect of a condominium association's foreclosure sale enforcing its super-priority lien.

This court's first dive into the topic came in 2014's *Chase Plaza*. In that case, a condo association foreclosed on a condo to recover unpaid dues. *Id.* at 168. The condo was encumbered by a bank's first deed of trust, and the bank subsequently sought to unwind the foreclosure sale on the bases that the sale price was unconscionably low and that the sale impermissibly purported to extinguish the bank's own lien on the property. *Id.* We generally rejected the bank's claims and explained that by virtue of Section 42-1903.13's terms, "general principles of foreclosure law," and legislative history, the condo association's foreclosure sale

extinguished the bank's lien on the property. *Id.* at 172-76. So except to the extent the bank's lien was satisfied by the foreclosure sale's proceeds—minus the proceeds that went first to satisfying the condo association's super-priority lien—the bank's interest in the condo was extinguished. *Id.* We previewed in *Chase Plaza* that the chapter of the D.C. Code governing these condo association foreclosure sales contains an anti-waiver provision. *Id.* at 178. That provision states that "this chapter may not be varied by agreement and any right conferred by this chapter may not be waived," "[e]xcept as expressly provided by this chapter." *Id.*; D.C. Code § 42-1901.07. But we reserved judgment on whether a condo association might waive its super-priority lien by expressly stating that a first deed of trust would survive a foreclosure sale.

We decided that question in 2018's *Liu*, when we held that a condo association's foreclosure sale extinguishes a first deed of trust even if the terms of the foreclosure sale state that the condo is being sold "subject to the first mortgage or first deed of trust" on the property. 179 A.3d at 874, 878-79. *Chase Plaza* and *Liu*, taken together, seem to have led to results that were largely unforeseen by lending banks. This court has confronted many cases where condo foreclosure sales pre-*Liu* were purportedly made subject to a first deed of trust encumbering the property and the sales were for well below market value, presumably because parties mistakenly believed that declaration leaving the first deed of trust in place would be

effective.  *Liu* made clear that such declarations had no effect and any first mortgage or deed of trust would be extinguished despite them.

Now to the facts of the matter before us.  Salvador Rivas took out a loan from Flagstar in 2009 to finance his purchase of a condo unit, and Flagstar obtained a first deed of trust as security for its loan.  After Rivas fell behind on his condo dues, NHH sought to foreclose, and provided the required public notice of a foreclosure sale in 2014.  The advertisement for the sale, and the auctioneer at the foreclosure itself, announced that the property was being "[s]old subject to [Flagstar's] first deed of trust for the amount of approximately $256,632.00 (as of 7/24/2009)."  AFI bought the property for $26,000.  At the time of that sale the condo was worth $237,930. The sale occurred on December 23, 2014—four months after we decided *Chase Plaza*, but several years before we decided *Liu.*

In January 2017, Flagstar filed a complaint for judicial foreclosure against AFI and Rivas.  Over a year later, and mere days after this court decided *Liu*, AFI filed its answer, stating that Flagstar's lien was extinguished by the 2014 foreclosure sale, contrary to the sale's terms.  Several months after this, in November 2018, Flagstar successfully moved to file an amended complaint that is now the operative complaint in this appeal.  That amended complaint added NHH as a party and asserted, for the first time, the following claims in addition to its initial claim for

judicial foreclosure: (1) a claim for declaratory relief positing that the foreclosure was invalid because the "sale price shocks the conscience," and Flagstar "was induced into not paying off the lien due to the false advertisement and representation of [NHH's] attorney that the sale was subject to [Flagstar's] lien"; (2) a claim for breach of fiduciary duty on the grounds that NHH chilled bidding by falsely advertising that Flagstar's first deed of trust would still encumber the property after the sale; and (3) unjust enrichment on the theory that NHH withheld proceeds from the foreclosure sale owed to Flagstar, and that AFI was unjustly enriched by Flagstar's continued payment of taxes on the condo (to the tune of about $24,000) after the foreclosure sale extinguished Flagstar's interest in the property. The trial court dismissed the breach of fiduciary duty and unjust enrichment claims against NHH as time-barred, while the remaining claims proceeded to discovery.

After discovery, NHH and AFI filed motions to dismiss the remaining claims or, in the alternative, for summary judgment on those claims. The trial court granted their motions to dismiss, and Flagstar now appeals.

## II. Analysis

"We review de novo an order granting a Rule 12(b)(6) motion to dismiss for failure to state a claim and a Rule 12(c) motion for judgment on the pleadings."[1] *Fourth Growth, LLC v. Wright*, 183 A.3d 1284, 1288 (D.C. 2018). To survive a motion to dismiss, "the complaint must present sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). We similarly review summary judgment rulings de novo. *Ward v. Wells Fargo Bank, N.A.*, 89 A.3d 115, 126 (D.C. 2014). Summary judgment should be granted in favor of a moving party when there is "no genuine issue of material fact" so that the moving party is "entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted). "In considering summary judgment, we view the facts in the light most favorable to the non-moving party." *Tr. 1245 13th St., NW No. 608 Tr. v. Anderson*, 905 A.2d 181, 184 (D.C. 2006).

Flagstar presses three claims on appeal. First, it argues that its claim for judicial foreclosure should not have been dismissed because whether Flagstar's lien was extinguished by a valid foreclosure sale depends upon a genuine issue of contested fact that cannot be adjudicated at either the motion to dismiss or the

---

[1] The trial court ruled that dismissal was warranted under both Rule 12(b)(6) and 12(c) for substantially the same reasons.

summary judgment stage of the proceedings. Second, Flagstar claims that because it did not learn that its interest in the condo was extinguished until this court decided *Liu* in 2018, the statute of limitations on its other claims should be tolled either by applying the discovery rule or principles of equitable tolling. Third, Flagstar argues that its claim of unjust enrichment against AFI is not time-barred because it continued to pay taxes on the unit within the three years prior to filing its suit. We address these arguments in turn.

*A. The judicial foreclosure claim was erroneously dismissed,*
*but appellees were entitled to summary judgment on that claim.*

Flagstar argues that the trial court improperly dismissed its judicial foreclosure claim on the faulty reasoning that its unconscionability challenge to the 2014 foreclosure sale was untimely. We agree that was not a proper basis for dismissing Flagstar's judicial foreclosure claim, but we nonetheless affirm the trial court's ruling on the alternative ground that appellees are entitled to summary judgment on this claim.

### 1. Flagstar's unconscionability defense was not untimely.

The trial court dismissed Flagstar's judicial foreclosure claim after concluding that, based on the pleadings alone, its lien had been extinguished by NHH's foreclosure sale. One premise underpinning that conclusion was that Flagstar's

challenge to the 2014 foreclosure sale as unconscionable was untimely. We disagree.

At the pleading stage on a judicial foreclosure claim, Flagstar was required to allege only that it was "the current holder of the Note and the beneficiary of the Deed of Trust," that Rivas "defaulted on the Note and failed to cure the default," and that it was "entitled to enforce the Deed of Trust through a judicial foreclosure sale." *Stevenson v. HSBC Bank USA, Nat'l Ass'n*, 324 A.3d 295, 307 (D.C. 2024) (quoting *Archie v. U.S. Bank, N.A.*, 255 A.3d 1005, 1011 (D.C. 2021)) (describing pleading burden for judicial foreclosure claim). It plausibly alleged that much. The trial court nonetheless dismissed this claim on the bases that (1) Flagstar's lien had been extinguished by NHH's prior foreclosure sale; and (2) Flagstar's challenge to that sale as unconscionable was time-barred. That reasoning missteps twice.

The trial court's first misstep is that it was not incumbent on Flagstar to preempt in its complaint the affirmative defense that its lien had been extinguished. "Allegations that seek to avoid or defeat a potential affirmative defense . . . are not an integral part of the plaintiff's claim for relief and lie outside his or her burden of pleading." *Staab*, 328 A.3d at 395 (D.C. 2024) (quoting *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 559 (D.C. 2016)). So when appellees answered the complaint by contending that Flagstar's lien had been extinguished by the 2014

foreclosure sale, Flagstar was free to counter in its amended complaint—as it did—that the 2014 sale was void because it was unconscionable.

The trial court's second and more critical misstep was in treating that counter as time-barred because it was raised for the first time in an amended complaint filed beyond the relevant limitations period. Contrary to that reasoning, Flagstar was asserting unconscionability as a rebuttal to the affirmative defense that Flagstar's lien had been extinguished, and "new facts and arguments" raised in "response to [an] affirmative defense" are not themselves subject to any limitations period. *Id.* at 394. This unconscionability argument was being advanced in service of the judicial foreclosure claim that Flagstar had timely pled, and mere arguments (as opposed to claims) cannot be time-barred.[2]

In short, Flagstar's unconscionability rebuttal to appellees' affirmative defense was not (and could not have been) time-barred. The trial court's basis for dismissing Flagstar's judicial foreclosure claim was thus legally flawed. That brings us to appellees' alternative argument that they are nonetheless entitled to summary

---

[2] In the trial court's defense, Flagstar confusingly pled unconscionability as part of a freestanding claim for declaratory relief in its amended complaint, and that freestanding claim was indeed filed outside the limitations period. Nonetheless, Flagstar's unconscionability argument also served as a direct counter to AFI's affirmative defense to the judicial foreclosure claim, and it should have been considered in conjunction with that claim as well.

judgment on the judicial foreclosure claim because the record evidence simply does not support Flagstar's unconscionability contention.  We now address that argument.

2. Appellees are entitled to summary judgment on the judicial foreclosure claim because, as a matter of law, the 2014 sale was not unconscionable.

We nonetheless affirm on the alternative ground that the summary judgment evidence cannot support a finding that the 2014 foreclosure sale was unconscionable. *See BDO USA, LLP v. Jia-Sobota*, 283 A.3d 699, 710 (D.C. 2022) (acknowledging our "discretion to affirm the trial court's judgment on an alternative ground, so long as there would be 'no procedural unfairness' in doing so" (quoting *Jaiyeola v. District of Columbia*, 40 A.3d 356, 372 (D.C. 2012))).[3]

A foreclosure sale, like other contracted-for sales, can be unwound on the basis that it was unconscionable.  *See New Penn*, 319 A.3d at 1004-06; *RFB Props. II, LLC v. Deutsche Bank Tr. Co. Ams.*, 247 A.3d 689, 696-97 (D.C. 2021) (discussing applicability of unconscionability doctrine to contracts for the sale of real property).  That is true here too even though this case raises the atypical situation where unconscionability is being asserted by a third party (Flagstar) who was not

---

[3] There is no unfairness in considering this alternative ground for affirmance where (1) the issue of whether the 2014 sale was valid was briefed in AFI's motion for summary judgment and Flagstar's opposition after the conclusion of discovery, and (2) the parties have briefed this potential basis for affirmance on appeal.

itself a party to the challenged sale, but whose rights were merely affected by it. *New Penn*, 319 A.3d at 1004-06. To prove unconscionability, a party generally must show both (1) "substantive unconscionability," or "contract terms which are unreasonably favorable to" one party; and (2) "procedural unconscionability," or some bargaining unfairness in how the parties came to the terms of the sale. *Archie*, 255 A.3d at 1015 (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)); *see also New Penn*, 319 A.3d at 1004-06 (assessing whether sale was for "unconscionably low" price and based on "presale misrepresentation[s]"). In a sufficiently "egregious situation," either substantive or procedural unconscionability "may suffice" on its own without a showing of the other. *Archie*, 255 A.3d at 1015 (quoting *Bennett v. Fun & Fitness, Inc.*, 434 A.2d 476, 480 n.4 (D.C. 1981)). That is in part because a sales price that is "so grossly inadequate as to shock the conscience" (i.e., a strong showing of substantive unconscionability) can "raise a presumption of fraud" in the contract's making (i.e., a presumption of procedural unconscionability). *RFB Props. II*, 247 A.3d at 696 (quoting *Nat'l Life Ins. Co. v. Silverman*, 454 F.2d 899, 916 (D.C. Cir. 1971)).

Let's start with the substantive unconscionability prong of the analysis. At first blush, the $26,000 purchase price of a condo with a tax-assessed value of $237,930 might strike one as so "grossly inadequate" as to render the sale substantively unconscionable. But there is a decisive counterweight to that line of

thinking. It is that at the time of the 2014 foreclosure sale, any purchaser of this condo would be faced with vast uncertainty regarding whether Flagstar's lien (of $256,632) would continue to encumber the property after the sale. Under our precedents at the time, that was an open question, even where the terms of the foreclosure sale purported to leave prior liens in place. We did not resolve that question until four years later in *Liu*. 179 A.3d at 874. If Flagstar's lien had survived the foreclosure sale, then the property was seemingly "underwater" and the deed to it was roughly worthless. So the $26,000 purchase price in 2014 was effectively a gamble on the legal uncertainty that the first deed of trust would be extinguished by NHH's foreclosure sale. The fact that AFI's gamble paid off, in retrospect, does not make the sale unconscionable at its making; we must consider only "the circumstances as they existed at the time" of the challenged sale. *RFB Props. II*, 247 A.3d at 696. And we "cannot set aside a foreclosure sale because a change in the law transforms a market-rate purchase into a bonanza." *Id.* at 698.

*New Penn* powerfully illustrates the point on facts that are similar to those presented here. In *New Penn*, we held that an unconscionability claim could not survive summary judgment where a condo with a tax-assessed value of $131,380 was sold for just $5,000 at a 2014 foreclosure sale. 319 A.3d at 1004-05. The condo in that case was purportedly sold "subject to any superior liens"—a bank held "a first deed of trust in the face amount of $204,000" encumbering the property—but

as in this case, at the time of sale this court had not yet determined whether that first deed of trust could survive that foreclosure sale. *Id.* at 1006-07. We concluded that the $5,000 price simply reflected the legal uncertainty as to the status of the deed of trust at the time of the 2014 sale, thereby foreclosing any claim of unconscionability. The same is true of the $26,000 sales price in this case, which as a fraction of the condo's tax-assessed value, is on par with the sales price we held could not support an unconscionability claim in *New Penn.* And as in *New Penn*, the foreclosure sale in this case was pre-*Liu*, when it was uncertain whether Flagstar's deed of trust worth $256,632—more than the condo's tax-assessed value—would survive the foreclosure sale and continue to encumber the property, with that ambiguity drastically affecting the condo's fair market value.

That brings us to the procedural unconscionability prong of the analysis. Procedural unconscionability at its core concerns one party gaining an unfair advantage over another, with misrepresentations being just one manner of procuring such an advantage through "unfair surprise." *See* Joseph M. Perillo, Corbin on Contracts § 29.4 (rev. ed. 2002) (equating procedural unconscionability to "unfair surprise" (quoting Uniform Commercial Code § 2-302 cmt. 1 (Am. L. Inst. & Unif. L. Comm'n 2001))); *see also BDO USA*, 283 A.3d at 712 (Deahl, J., concurring) ("The procedural component of unconscionability focuses on the bargaining process itself, essentially asking whether the term was agreed to via unfair surprise.").

Flagstar offers one potential way to distinguish *New Penn* from this case on this prong of the analysis. It is that in *New Penn*, the foreclosure sale was advertised as being subject to "any superior liens" generically—with no specific mention of the bank's $204,000 first deed of trust—which was "a sufficiently neutral statement" that allowed "all parties to draw their own conclusions." 319 A.3d. at 1006. Whereas here, the foreclosure sale specifically stated that the condo was being "sold subject to Flagstar's first deed of trust for the amount of approximately $256,632.00 (as of 7/24/2009)." Flagstar argues that the more particularized reservation of Flagstar's deed of trust was a direct misrepresentation that provides a degree of procedural unconscionability that was simply not present in *New Penn*.

We are unpersuaded. This attempted distinction is illusory, where any routine title search in *New Penn* would have revealed the bank's specific $204,000 lien on the subject condo in *New Penn*, a point that was undisputed in the briefing in that case. Furthermore, when the buyer at the 2014 sale in *New Penn* took possession of the property just a month afterward, the resulting deed noted (counterfactually, it turns out) that the unit was sold "subject to the balance on a first deed of trust in the face value amount of $204,000.00," indicating that the bank's lien was not an obscurity to the interested parties. *Id.* at 1004. So the parties in *New Penn* were in the same position as the parties in this case: they were left to assess whether a foreclosure sale would extinguish a bank's first deed of trust, which was simply a

legal uncertainty at the time. Such shared, generalized uncertainty cannot on its own give rise to a claim of procedural unconscionability.

As with substantive unconscionability, we must assess a claim of procedural unconscionability as of 2014, "at the time of contracting," and "not by hindsight." *See* James J. White & Robert S. Summers, Uniform Commercial Code § 4-3 (5th ed. 2000); *see also New Penn*, 319 A.3d at 1006. At the time of the 2014 foreclosure sale, none of the parties in this case were in any superior position to know that the presale representation that the condo was sold subject to the first deed of trust was, as it later turned out to be, false.[4] "All parties had the same factual information before and after the sale." *New Penn*, 319 A.3d at 1007. And all parties—especially Flagstar, a "federally chartered national bank"—were sufficiently sophisticated to conduct an assessment of how the foreclosure sale might affect the first deed of trust, which would have required reading the relevant statutes and nascent case law in the area (like *Chase Plaza*), and making uncertain legal prognostications about how our law would develop.

---

[4] While the statement in *New Penn* did not turn out to be strictly false—there simply were no "superior liens"—it could certainly have been misleading. Stating that a condo is being sold subject to any superior liens at least strongly suggests that superior liens might exist, with a first deed of trust being the prime candidate. The record in *New Penn* suggests that the seller specifically (but mistakenly) understood that the first deed of trust would survive the foreclosure sale, as reflected in the deed resulting from that sale which specifically noted that the lien persisted. *Id.* at 1004.

Given the lack of asymmetries in access to information or ability to interpret it among the parties, any surprise here regarding the legal effect of the presale representation cannot be considered unfair. *See Television Cap. Corp. of Mobile v. Paxson Commc'ns Corp.*, 894 A.2d 461, 467 (D.C. 2006) (evaluating unfair surprise within procedural unconscionability and considering the "ability" of the parties "to know and understand the disputed contract terms" in that analysis (quoting *Brasington v. EMC Corp.*, 855 So.2d 1212, 1218 (Fla. Dist. Ct. App. 2003))); *see also Kenyon Ltd. P'ship v. 1372 Kenyon St. Nw. Tenants' Ass'n*, 979 A.2d 1176, 1187 (D.C. 2009) (party's unconscionability claim, which rested on "circumstances[] as they developed after the contract was executed," failed where he "knew or should have known of the risk" existing at the time of contract formation). The legal uncertainties about the effects of the 2014 foreclosure affected all parties, and each was working with the same relevant information. One party's gamble (AFI's decision to buy) paid off while another's (Flagstar's decision not to buy) did not, but those disparate results did not come via any unfair information asymmetry or other kernel of procedural unconscionability.

At bottom, just as the legal uncertainties in 2014 preclude a finding that this sale was substantively unconscionable, they also preclude a finding that it was procedurally unconscionable. This case cannot be meaningfully distinguished from

*New Penn*, so summary judgment in AFI's favor was warranted on the judicial foreclosure claim.

### B. Flagstar's unjust enrichment claim against AFI survives.

Flagstar further argues that its unjust enrichment claim against AFI was improperly dismissed. Flagstar alleged in its 2018 amended complaint that it "has continued to pay the taxes on" the condo, to the tune of "about $24,000.00." In its view, that raised a genuine issue of material fact regarding whether AFI was the indirect beneficiary of Flagstar's tax payments (obviating AFI's own tax obligations) under circumstances in which it would not be "fair" or "just" for AFI to retain the benefit, i.e., Flagstar's mistaken understanding that its lien survived the foreclosure sale. *Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 813-14 (D.C. 2009) (unjust enrichment claims sound in equity and are evaluated "case-by-case"); *see also id.* at 817 ("[r]estitution will . . . obtain where a party takes protective action that benefits another—such as paying taxes due on property—merely to protect his own interest in that property, and even where his interest is disputed at the time of payment."). While the trial court ruled that this unjust enrichment claim was time barred, Flagstar counters that its allegations are most naturally read to mean that it had continued to pay taxes in the three years prior to amending its complaint to include the unjust enrichment claim, and there was at least no time bar on Flagstar's attempts to recoup payments that it had made in the three preceding years. We agree.

For statute of limitation purposes, an unjust enrichment claim accrues "when the plaintiff's last service has been rendered and compensation has been wrongfully withheld." *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1219 (D.C. 2005). The parties agree that a three-year statute of limitations applies to Flagstar's unjust enrichment claim. *See* D.C. Code § 12-301(8).

Flagstar's amended complaint alleged that it "*has continued* to pay the taxes" since the 2014 foreclosure sale, which we must liberally read to mean that Flagstar continued to pay the taxes due on the condo up until the time it filed its amended complaint. *See Close It! Title Servs., Inc. v. Nadel*, 248 A.3d 132, 138 (D.C. 2021) ("All factual allegations in a complaint challenged under Rule 12(b)(6) must be . . . liberally construed in the plaintiff's favor."); *but see Long v. United States*, 312 A.3d 1247, 1263-64 (D.C. 2024) (discussing frequent ambiguity in present perfect tense as to whether act was completed in the past or is still ongoing). For pleading purposes, that statement sufficiently alleged that Flagstar continued to pay taxes on the condo within the three-year limitations period immediately preceding the filing of its amended complaint.

AFI does not defend the trial court's outright dismissal of Flagstar's unjust enrichment claim as time-barred, but counters that we might nonetheless affirm on the alternative basis that it was entitled to summary judgment on this claim. We

again disagree. If its argument is that it was entitled to summary judgment on statute of limitations grounds given Flagstar's failure to identify precisely when it made its purported tax payments, any uncertainty on that score counts against AFI—not Flagstar—as the party with the burden of establishing its limitations defense. *Tovar v. Regan Zambri Long, PLLC*, 321 A.3d 600, 615 (D.C. 2024) ("[T]he burden of showing that a claim is time-barred" is borne by the defendant. (quoting *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1019-20 (D.C. 2013))).

AFI's argument instead seems to be that Flagstar did not adduce sufficient evidence to support its unjust enrichment claim because it did not produce receipts or anything else substantiating its tax payments. That argument likewise falters. Flagstar proffered at least some evidence that it had made property tax payments that benefited AFI, and given that there was no evidence to the contrary, that is sufficient to survive summary judgment. Specifically, Flagstar proffered a "custodian of records as a witness" who could presumably testify to the precise tax payments that Flagstar made on the property. AFI did not counter with any evidence or proffer of its own to suggest that Flagstar did not make the annual tax payments on the property. Given that AFI was seemingly in just as good a position as Flagstar to adduce evidence that it (rather than Flagstar) had made the annual property tax payments on the condo over the course of its ownership, and it never did so, Flagstar presented sufficient evidence to survive summary judgment.

We thus reverse the trial court's dismissal of the unjust enrichment claim against AFI, which should proceed to trial.

*C. Flagstar's remaining arguments lack merit.*

Regarding Flagstar's additional claims for declaratory relief and breach of fiduciary duty, as well as its unjust enrichment claim against NHH,[5] the trial court correctly ruled that those claims were time-barred. Flagstar had three years from the date of the 2014 foreclosure sale to raise those claims, and it did not raise them until 2018, around one year after the limitations period had expired. *See Nicklin v. Stonesdale Unit Owners' Ass'n*, 307 A.3d 477, 483 (D.C. 2024) (describing as a general principle that claims accrue "when injury occurs" (quoting *Medhin v. Hailu*, 26 A.3d 307, 310 (D.C. 2011))).

Flagstar counters that the limitations period did not begin to run at the time of the 2014 sale, but only once this court decided *Liu* in 2018, because only then did its injury become apparent. It invokes the "discovery rule" and "equitable tolling" as compelling that result. Neither doctrine does the work Flagstar would need it to do.

---

[5] The basis for this unjust enrichment claim is different than the one against AFI. Flagstar's unjust enrichment claim against NHH was based on its allegation that it was owed, as the next-highest priority lienholder, the balance of the foreclosure sale proceeds that did not go towards Rivas's overdue condo assessments and allegedly remained in NHH's hands.

The discovery rule "is designed to prevent the accrual of a cause of action before an individual can reasonably be expected to discover that he has a basis for legal redress." *East v. Graphic Arts Indus. Joint Pension Tr.*, 718 A.2d 153, 157 (D.C. 1998) (quoting *Bussineau v. President & Dirs. of Georgetown Coll.*, 518 A.2d 423, 430 (D.C. 1986)). But the discovery rule does not save Flagstar's claims, because it applies to situations in which a plaintiff could not, even with reasonable investigation, have discovered the *facts* essential to its claims. *Kidwell v. District of Columbia*, 670 A.2d 349, 353 (D.C. 1996) (Under the discovery rule, the statute of limitations "is tolled until the facts that would support a [claim] . . . were apparent or should have been apparent to a person with a reasonably prudent regard for his rights." (internal quotation marks omitted)). "The discovery rule does not apply to circumstances, such as those presented here, where the plaintiff has failed to discover the relevant law even though the existence of an injury is apparent." *East*, 718 A.2d at 157; *see also Johnson v. Long Beach Mortg. Loan Tr. 2001-4*, 451 F. Supp. 2d 16, 42 (D.D.C. 2006) ("Knowledge of facts, and not knowledge of the legal significance of those facts, controls the time of accrual.").

Flagstar argues the discovery rule applies because the fact that the law changed is what created its injury, so the existence of the injury was not apparent until *Liu*. It points to language in our decision in *U.S. Bank Trust, N.A. v. Omid Land Group, LLC*, for example, where we said that pre-*Liu*, "it was unknown to the parties

at the relevant time whether the sale would extinguish [a lender's] first deed of trust even though the Advertisement of Sale said the sale was subject to all prior liens." 279 A.3d 374, 380 (D.C. 2022).

This argument fails because calling a change in the law "a fact" does not make it so, at least not in the relevant sense. No matter what you call them, the discovery rule does not apply to developments in the law, *East*, 718 A.2d at 157, or the discovery of facts' legal significance, *Johnson*, 451 F. Supp. 2d at 42. *Liu* was just an interpretation of a preexisting statute—not a new fact—and we even previewed that potential interpretation of the law several months prior to the foreclosure sale here in *Chase Plaza*.

Flagstar also argues that equitable tolling should operate to rescue its claims, which we will assume arguendo might apply to toll the statute of limitations here.[6] Where applicable, equitable tolling might justify extending deadlines in "extraordinary circumstances." *Accenture Sub, Inc. v. District of Columbia*, 283 A.3d 130, 137 (D.C. 2022) (internal quotation marks omitted). "The appropriateness

---

[6] In *East*, we noted that this court has established "two limited exceptions to our generally strict application of statutes of limitations: the lulling doctrine and the discovery rule," but we added that we have also made at least one other type of "equitable modification" to a statute of limitations in *Simpson v. D.C. Off. of Hum. Rts.*, 597 A.2d 392 (D.C. 1991). 718 A.2d at 156 n.9. We then assumed without deciding in *East* that equitable tolling could apply to a one-year statute of limitations for a DCHRA claim. *See id.* at 159-61.

of equitable tolling is a fact-specific question that turns on balancing the fairness to both parties" and involves factors like "the benefitting party's vigilance, the presence of unexplained or undue delay, whether tolling would work an injustice to the other party, and the importance of ultimate finality in legal proceedings." *Neill v. D.C. Pub. Emp. Rels. Bd.*, 234 A.3d 177, 187 (D.C. 2020) (cleaned up). But these factors do not weigh in Flagstar's favor.

As noted, Flagstar was not vigilant in protecting its interest. It had a responsibility as an institutional lender to keep abreast of the law governing the instruments that define its interests in the District, and in the face of vast legal uncertainty about how the 2014 foreclosure sale would affect its lien on the condo— uncertainty that we highlighted mere months earlier in *Chase Plaza*—it opted not to protect its interests. Importantly, when we later clarified the law in *Liu* and made clear that Flagstar's lien was extinguished by the earlier foreclosure sale, that did not mark a sea-change in the law contrary to any prior holding, but a mere clarification of an uncertainty in the law. Flagstar could have reasonably been expected to act with "reasonable diligence" in the face of that uncertainty in the years that followed the foreclosure sale, rather than waiting on *Liu* to resolve that uncertainty. For example, Flagstar could have brought an action for declaratory relief immediately after the foreclosure sale to secure its lien. But it did not, and equity does not now demand that we resurrect its tardy claims.

Tolling the limitations period would potentially permit Flagstar to unwind a sale that happened over a decade ago (and four years before it attempted to file its amended complaint), despite AFI's competing interest in the finality of that sale. "[C]ourts of equity have been more inclined to enjoin a prospective foreclosure sale than they have been to set aside a completed one," *Johnson v. Inter-City Mortg. Corp.*, 366 A.2d 435, 437 n.4 (D.C. 1976), and Flagstar had every incentive to seek to enjoin the 2014 foreclosure sale—and it then had every incentive to attempt to unwind it in the years that immediately followed the sale—given that we had already previewed in *Chase Plaza* that such a foreclosure sale might extinguish its interest in the property.

Because the statute of limitations ran before Flagstar pled its claims for declaratory relief, breach of fiduciary duty, and unjust enrichment against NHH, those claims are time-barred and were properly dismissed. Neither the discovery rule nor equitable tolling rescues those claims.

### III. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. The case is remanded for trial on Flagstar's unjust enrichment claim against AFI.

*So ordered.*